# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
November 17, 2011 Session

## EAGLES LANDING DEVELOPMENT, LLC. v. EAGLES LANDING APARTMENTS, LP., ET AL.

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-09-0997      Walter L. Evans, Chancellor

---

### No. W2011-00689-COA-R3-CV - Filed February 2, 2012

---

This is a breach of contract case. Following a bench trial, the trial court awarded Appellee Developer the remaining balance due under a Development Agreement that was entered by and between Appellee and the Appellants, a partnership and its limited liability partners, for construction of an apartment complex. Appellants contend that Appellee was not entitled to final payment because the general partner, who is not a party to this appeal, had not funded the development fees that were contemplated under a Partnership Agreement, to which Appellee was not a party. Specifically, Appellants argue that the payment under the Development Agreement is contingent upon satisfaction of the funding requirements specified in the Partnership Agreement. We conclude that the conditions precedent under the Development Agreement were met, and that the Appellee was, therefore, entitled to its full fee under the Development Agreement. The trial court assessed judgment against the limited liability partners and the partnership. Under the Tennessee Revised Uniform Partnership Act, Appellants' status as limited partners protects them from liability for the debts of the partnership. Appellee contends that it is a third-party beneficiary under the Partnership Agreement and may, therefore, have judgment against the limited partners who were parties to that agreement. We conclude that the third-party beneficiary issue is waived and that the trial court erred in entering judgment against the limited partners. Affirmed in part, reversed in part, and remanded.

### Tenn. R. App. P. 3. Appeal as of Right; Judgment is Affirmed in Part; Reversed in Part; and Remanded

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY, M. KIRBY, J., joined.

Robert L. Crawford and Joseph B. Reafsnyder, Memphis, Tennessee, and Charles L. Perry, Dallas, Texas, for the appellants, Eagles Landing Apartments, LP, PNC Multifamily Capital

Institutional Fund XXX, LP, and Columbia Housing SLP Corporation.

Dedrick Brittenum, Jr., and Kenya S. Hooks, Memphis, Tennessee, for the appellee, Eagles Landing Development, LLC.

**OPINION**

On or about August 25, 2005, Eagles Landing Development L.L.C. ("Eagles Landing," or "Appellee") entered into a Development Agreement with Eagles Landing Apartments, L.P. ("ELA"). This original Development Agreement was amended on December 21, 2005. The Amended Development Agreement (the "Development Agreement") provides for the construction of the ELA apartment complex. The Development Agreement further provides for a fee of $1,415,032.00 to be paid to the Appellee, Eagles Landing for the project.[1]

ELA was formed on or about March 17, 2005, under a Partnership Agreement, which was amended and restated on December 1, 2005. The Amended and Restated Partnership Agreement (the "Partnership Agreement") was entered by and between Bluff City Community Development Corporation ("Bluff City"), as the general partner, and PNC Multifamily Capital Institutional Fund XXX L.P. ("PNC") and Columbia Housing S.L.P. Corp., as the limited partners ("Columbia," and together with ELA and PNC, "Appellants").[2]

It is undisputed that Eagles Landing received three of four payments pursuant to the Development Agreement, leaving the last payment of $931,000.00 unpaid. Appellants argued that they were not required to pay the remaining balance because the Development Agreement was expressly subject to the terms and conditions of the Partnership Agreement, although Eagles Landing was not a party to the Partnership Agreement. The Partnership Agreement contains a provision stating that payment of the development fee should come from the net cash flow of the partnership, or from Bluff City, the general partner, should the net cash flow be insufficient. According to Appellants, the net cash flow was insufficient to pay the development fee, and Bluff City failed to pay the partnership the funds necessary to pay the development fee. Because the Development Agreement specifically states that it is "subject to the terms and conditions of the Partnership Agreement," the Appellants argued

---

[1] As set out in full context below, Paragraph 6.8(b) of the Partnership Agreement provides for a developer's fee of "$1,238,787 (which may be increased as permitted by the Tax Credit Agency)." It appears that the original fee did, in fact, increase to $1,415,032.00. Regardless, there is no dispute between the parties as to whether the $1,415,032.00 was correct, and neither side has appealed the amount of the trial court's judgment.

[2] Bluff City was not made a party to this suit.

that Bluff City's failure to supplement the insufficient cash flow to the partnership (under the Partnership Agreement) was a condition precedent to the full payment of the development fee under the Development Agreement, the nonoccurrence of which excused the partnership's obligation to pay the full development fee to Eagles Landing.

On May 8, 2009, Eagles Landing filed suit for breach of contract against the Appellants. Appellants filed their joint answer on July 6, 2009, in which they denied the material allegations set out in the complaint and reiterated their position that the payment of Eagles Landing's development fee was contingent upon the terms of the Partnership Agreement. Appellants then filed a motion for summary judgment, which was ultimately denied by order of January 19, 2011. The case proceeded to hearing on January 19 and 20, 2011. After the bench trial, the trial court awarded Eagles Landing the remaining balance on the development fee, i.e., $931,000.00 plus interest at a rate of six percent per annum as contemplated under the Development Agreement. The court specifically found that Eagles Landing had performed all work required under the contract and, therefore, was entitled to its fee. The court further found that the limited partners, PNC and Columbia, were jointly and severally liable with the partnership for the payment of the fee, as they were required under the Partnership Agreement to fund the partnership, which in turn was obligated to pay the developer's fee. Appellants appeal, raising three issues for review as stated in the brief:

> I. Whether the trial court erred in awarding a development fee to Appellee and against the Appellants?
>
> II. Whether the trial court erred in awarding a development fee contrary to the terms of the Partnership Agreement and Development Agreement, and erred in failing to give effect to the provision in the Development Agreement that payment of any fee "shall be subject to the terms and conditions of the Partnership Agreement?"
>
> III. Whether the trial court erred in awarding a development fee against PNC Multifamily, and/or Columbia, who were not parties to the development agreement, were not responsible for payment of any development fee pursuant to either the Development Agreement or Partnership agreement, and were solely limited partners in Eagles Landing Apartment L.P. at the material times, and as such were not liable for any debt or obligations of the partnership.

Because this case was tried by the court, sitting without a jury, this Court conducts a

-3-

*de novo* review of the trial court's decision with a presumption of correctness as to the trial court's findings of fact, unless the evidence preponderates against those findings. ***Wood v. Starko***, 197 S.W.3d 255, 257 (Tenn. Ct. App. 2006). For the evidence to preponderate against a trial court's finding of fact, it must support another finding of fact with greater convincing effect. ***Walker v. Sidney Gilreath & Assocs.***, 40 S.W.3d 66, 71 (Tenn. Ct. App. 2000); ***The Realty Shop, Inc. v. R.R. Westminster Holding, Inc.***, 7 S.W.3d 581, 596 (Tenn. Ct. App. 1999). This Court reviews the trial court's resolution of legal issues without a presumption of correctness. ***Johnson v. Johnson***, 37 S.W.3d 892, 894 (Tenn. 2001).

The question of interpretation of a contract is a question of law. ***Guiliano v. Cleo, Inc.***, 995 S.W.2d 88, 95 (Tenn. 1999). Therefore, the trial court's interpretation of a contract is not entitled to a presumption of correctness on appeal. ***Allstate Insurance Company v. Watson***, 195 S.W.3d 609, 611 (Tenn. 2006); ***Angus v. Western Heritage Ins. Co.***, 48 S.W.3d 728, 730 (Tenn. Ct. App. 2000). "This Court must review the document ourselves and make our own determination regarding its meaning and legal import." ***Hillsboro Plaza Enters. v. Moon***, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993).

"The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern." ***Planters Gin Co. v. Fed. Compress & Warehouse Co ., Inc.***, 78 S.W.3d 885, 890 (Tenn. 2002). "The court's role in resolving disputes regarding the interpretation of a contract is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the language used." ***Allstate Ins. Co.***, 195 S.W.3d at 611; ***Staubach Retail Services–Southeast LLC v. H.G. Hill Realty Co.***, 160 S.W.3d 521, 526 (Tenn. 2005); ***Bob Pearsall Motors, Inc. v. Regal Chrysler–Plymouth Inc.***, 521 S .W.2d 578, 580 (Tenn. 1975).

"Where a trial court hears a case without a jury, we review the amount of damages awarded by the trial court as a question of fact with a presumption of correctness, and will only alter or amend the amount if the trial court utilized the wrong measure of damages or when the evidence preponderates against the amount of damages awarded." ***Smith v. Williams***, No. E1999–01346–COA–R3–CV, 2000 WL 277059, at 4 (Tenn. Ct. App. March 15, 2000) (citing Tenn. R. App. P. 13(d)).

Concerning fees payable to Eagles Landing, the Development Agreement provides, in relevant part, as follows:

> 3. Development Fee,
> (a) For services performed and to be performed under Sections 1 and 2 of this Agreement. . . the Partnership agrees to pay the Developer a Development Fee in the aggregate amount of one

million four hundred fifteen thousand thirty-two Dollars ($1,415,032.00). Payment of the fee shall be subject to the terms and conditions of the Partnership Agreement, and shall be payable by the Partnership to the Developer from capital contributions made by the investing partners, mortgage loan proceeds or net cash flow, but only after payment of all construction costs and the establishment of required reserves.

It is undisputed that Eagles Landing performed all of its duties and obligations under the Development Agreement (i.e., it completed the building of the ELA apartments) and that it was, consequently, due the full payment under the agreement. As noted above, Appellants paid Eagles Landing all but $931,000.00 of its earned fee.

The Development Agreement references the Partnership Agreement. Eagles Landing was not a party to the Partnership Agreement. The Partnership Agreement is a long and complex document which we have reviewed in its entirety. Section 6.8(b) of the Partnership Agreement addresses the payment of a development fee and provides, in pertinent part, as follows:

The Partnership shall accrue and pay a Development Fee of $1,238,787 (which may be increased as permitted by the Tax Credit Agency)[3] to the Developer for services rendered in negotiating, coordinating and supervising the planning, architectural, engineering and construction services necessary for the construction of the Project as more specifically set forth in the Development Agreement. The Development Fee shall be capitalized to the depreciable basis of the Project, and earned in accordance with the Development Agreement.

The Partnership Agreement further provides that the cash fee component of the development fee "shall be paid [by the Partnership] from the proceeds of the [] Installments. . . ." These "Installments" are the capital contributions made by the investment limited partners. Mortgage loan proceeds could also be available at the time of the last Installments, as mortgage loan conversion is made a condition to those Installments. The "Deferred Developer's Fee" (i.e., the balance of the developer's fee) is paid "in accordance with Article IV" of the Partnership Agreement, which permits net cash flow to be used for that purpose in certain instances. Finally, the Partnership Agreement expressly contemplates that the funds available from the foregoing sources might be insufficient to fully pay the developer's

---

[3] *See* footnote 1, *supra*.

fee. "In the event that any portion of the Deferred Development Fee remains unpaid on January 1, 2019," the Partnership Agreement contemplates that Bluff City, as the general partner, will be obligated to pay to the Partnership an amount equal to the unpaid developer's fee. Appellants contend that they are not obligated to pay the Deferred Developer's Fee until 2019, when Bluff City would be obligated to pay the unpaid amount into the Partnership. We disagree.

In their brief, Appellants place much emphasis on the fact that the trial court ruled that the Partnership Agreement would not be considered in determining whether Eagles Landing was due its development fee because Eagles Landings was not a party to the Partnership Agreement. Specifically, Appellants contend that the fact that Eagles Landing was not a party to the Partnership is not dispositive because the Development Agreement, to which Eagles Landing was a party, is contingent upon payment obligations contemplated under the Partnership Agreement. A review of the trial court's ruling reveals that the Appellants have misconstrued the crux of the holding. The trial court stated that the Partnership Agreement obligated the Appellants "to perform the terms of the [Partnership Agreement] and to pay to [Eagles Landing] the remainder of the fees which are earned, but not paid." However, the court specifically held that Eagles Landing's "signing off on the [Partnership Agreement] does not adversely affect the obligation of the limited partnership. . .who agreed in the partnership agreement to provide. . .sufficient funds to take care of the development fee. . . ."[4] In other words, the trial court interpreted the Development Agreement statement that "[p]ayment of the [Developer's] fee shall be subject to the terms and conditions of the Partnership Agreement" to merely indicate that the cash flow for the project would be funded and paid as contemplated under the Partnership Agreement. The trial court concluded that the Development Agreement obligates the partnership to pay Eagles Landing's fee so long as all work is completed (i.e., the fee was earned) and "only after payment of all construction costs and the establishment of required reserves." So, under the plain language of the Development Agreement, there are three conditions precedent to the payment of the developer's fee. First, the work must be satisfactorily completed. The record indicates that the construction on the apartment complex was completed on or about December 16, 2006. Moreover, the record reveals that Eagles Landing substantially complied with all terms and conditions of the Development Agreement. From the record, it is clear that Eagles Landing met this requirement. The second condition for payment is that all construction costs had to be paid. Extensive testimony was given that the construction costs were paid. Consequently, the question of whether Eagles Landing is entitled to its fee rests on the third condition stated

---

[4] We note that the trial court's use of the term "signing off" does not indicate that Eagles Landing signed the Partnership Agreement as a party thereto. Rather, it references the fact that Eagles Landing was fully aware of the existence of the Partnership Agreement and the terms thereof, and that Eagles Landing did not express any concerns regarding the Partnership Agreement before the lawsuit arose.

in the Development Agreement—i.e., the establishment of required reserves.

Appellants contend that, because the required reserves were not actually funded, that the third condition precedent was not met. However, as set out above, our role in resolving disputes regarding the interpretation of a contract is to ascertain the intention of the parties "based upon the usual, natural, and ordinary meaning of the language used." **Allstate Ins. Co.**, 195 S.W.3d at 611; **Staubach Retail Services–Southeast LLC**, 160 S.W.3d at 526; **Bob Pearsall Motors**, 521 S .W.2d at 580. The Development Agreement requires the "establishment of the required reserves," but does not go so far as to require that the reserves be fully funded in order to satisfy this contingency. Black's Law Dictionary 566 (7th ed. 1999) defines the verb "establish" in relevant part, as "[t]o make or form; to bring about or into existence." Concerning whether the required reserves were actually established, Carl Mabry, the President of Bluff City, testified, in relevant part, as follows:

> Q. All right, sir. Now, and then it–the last part of that sentence goes, establishment of required reserve. Tell the Court about the required reserves.
>
> A. Well, there were two reserves that were required. One was the operating reserve; the other was the replacement reserve.
>
> Q. All right. Now, the first one you talked about, was it established?
>
> A. Yes.
>
> Q. Okay. And tell the Court how you know it was established.
>
> A. Well, the operating reserve was established because we actually kept–which came from PNC–a monthly, I guess kind of a tab. It was actually a draw spreadsheet for the accounting of the property. And each time there was some type of change, be it from PNC's side or from [the] developer's side, we noted on the spreadsheet. And so it was noted on the spreadsheet and we had conversations about it being established.
>
> *       *       *
>
> Q. Okay. Now, I wanted you to think about past tense, that it was established. Was it established?

A. Yes.

\*                        \*                        \*

Q. Would you examine [trial exhibit 7]. . . . What is the document?

A. It is an e-mail from Linda Hood, who works for PNC Bank.

\*                        \*                        \*

Q. And what is [sic] the contents of that document; what does it say?

A. It is a confirmation saying that the replacement reserve account for Eagles Landing has been received, the funds for the replacement reserve account for Eagles Landing has [sic] been reserved.

Q. All right, sir. Now, as to the second account, reserve account, what was the second reserve account called?

A. It was an. . .operating reserve account.

Q. Was that operating reserve account established?

A. Yes.

Q. How do you know?

A. Had a conversation with Danita Whalen with PNC about it being established.

Mr. Mabry's testimony is not contradicted on this point. Consequently, we can only conclude, as did the trial court, that the reserves contemplated under the Development Agreement were, in fact, established. From the record as a whole, we conclude that all three of the conditions precedent under the Development Agreement were met in this case. Consequently, Eagles Landing was entitled to full payment under that contract. While Bluff City's obligation to fund the remaining balance due under the Development Agreement may not mature until 2019 (under the Partnership Agreement), this fact does not, *ipso facto*, mean

that the Appellants' obligations under the Development Agreement were not due and payable when all conditions were satisfied.

Appellants, Columbia and PNC, further argue that, even if the full developer's fee is due under the Development Agreement, that they were not parties to that agreement, and were only limited partners in the partnership. Consequently, they contend that they cannot be charged for any liability of the partnership under the Development Agreement. We agree.

The general rule, under the Tennessee Uniform Partnership Act ("TUPA"), is that "all partners are liable jointly and severally for all obligations of the partnership unless otherwise agreed by the claimant or provided by law." Tenn. Code Ann. § 61-1-306. This general rule is modified by the Limited Liability Partnership ("LLP") amendments to the TUPA for the protection of partners in registered limited liability partnerships. The LLP amendments to the TUPA provide that:

> [A] partner in a registered limited liability partnership is not liable, directly or indirectly (including by way of indemnification, subrogation, contribution, assessment or otherwise), for debts, obligations and liabilities of or chargeable to the partnership or another partner, whether in tort, contract, or otherwise, arising from omissions, negligence, wrongful acts, misconduct or malpractice committed while the partnership is a registered limited liability partnership and in the course of the partnership business by another partner or an employee, agent, or representative of the partnership.

Tenn. Code Ann. § 61-1-306(c). Tennessee Code Annotated Section 61-1-306(d) states that:

> Subsection (c) does not affect the liability of a partner in a registered limited liability partnership for such partner's own omissions, negligence, wrongful acts, misconduct or malpractice, or that of any person under such partner's direct supervision and control.

There is no evidence in this case that either Columbia or PNC has committed any of the offenses enumerated in Subsection (d) above. Consequently, under Subsection (c), as partners in a limited liability partnership, neither Columbia nor PNC can be held liable for the debts of the partnership. In its order, the trial court assesses the judgment and costs "to [PNC, Columbia, and ELA] jointly and severally." The court makes no finding concerning the basis for its assessment and appears to disregard PNC and Columbia's status as limited

liability partners.

However, Eagles Landing contends that it is entitled to recover the judgment from PNC and Columbia (jointly and severally) based upon Eagles Landing's contention that it is a third-party beneficiary of the Partnership Agreement. The trial court made no such finding. From our review of the record and the trial court's order, it does not appear that the issue of whether Eagles Landing is entitled to recover under the Partnership Agreement as a third-party beneficiary was actually raised or addressed at the trial level. It is well settled that matters not raised at the trial level are considered waived on appeal. **Waters v. Farr**, 291 S.W.3d 873, 918 (Tenn.2009) (stating that issues not raised in the trial court are waived on appeal); Tenn. R. App. P. 36(a) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Here, Eagles Landing filed suit against PNC, Columbia, and ELA. There is no indication that Eagles Landing was unaware of the fact that PNC and Columbia were limited partners. Consequently, if Eagles Landing wished to pursue its third-party beneficiary claim, it should have raised that issue in the trial court. However, this was not done. Therefore, while we affirm the trial court's judgment and the amount thereof, we reverse its assessment of that judgment to PNC and Columbia, and remand to the trial court for the sole purpose of entry of judgment against only the partnership, ELA.

For the foregoing reasons, the order of the trial court is affirmed in part, reversed in part, and remanded. Costs of this appeal are assessed jointly and severally against the Appellants, Eagles Landing Apartments, L.P., PNC Multifamily Capital Institutional Fund XXX. L.P., Columbia Housing, S.L.P., and their surety.

_____
J. STEVEN STAFFORD, JUDGE