# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### April 17, 2013 Session

## PNC MULTIFAMILY CAPITAL INSTITUTIONAL FUND XXVI LIMITED PARTNERSHIP, ET AL. v. BLUFF CITY COMMUNITY DEVELOPMENT CORPORATION

### Direct Appeal from the Chancery Court for Shelby County
### No. CH-08-1494-02    Arnold Goldin, Chancellor

### No. W2012-01611-COA-R3-CV - Filed July 18, 2013

The trial court appointed a receiver for the appellant nonprofit corporation and held its president in contempt for repeated failures to comply with the court's previous orders. The nonprofit corporation appeals. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

ALAN E. HIGHERS, P.J., W.S., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Venita Marie Martin, Memphis, Tennessee, for the appellant, Bluff City Community Development Corporation

Robert L. Crawford, Joseph B. Reafsnyder, Memphis, Tennessee, for the appellees, PNC Multifamily Capital Institutional Fund XXVI Limited Partnership, et al

## OPINION

### I.  FACTS & PROCEDURAL HISTORY

This is the fourth appeal of this case, which involves allegations of misconduct, misappropriation and various breaches of contract and trust related to three tax credit partnerships that own tax credit apartment complexes in Memphis, Tennessee.  The issues before us on appeal are narrow, so we will not belabor this opinion with a complete history of the proceedings.  Our previous opinions can be found at *PNC Multifamily Capital Institutional Fund XXVI Ltd. Partnership v. Mabry*, No. W2011-01679-COA-R3-CV, 2012 WL 5897355 (Tenn. Ct. App. Nov. 26, 2012); *PNC Multifamily Capital Institutional Fund XXVI Limited Partnership v. Bluff City Community Development Corp.*, 387 S.W.3d 525 (Tenn. Ct. App. May 4, 2012); and *Eagles Landing Development, L.L.C. v. Eagles Landing Apartments, L.P.*, 386 S.W.3d 246 (Tenn. Ct. App. Feb.2, 2012).

The plaintiffs in this matter are: PNC Multifamily Capital Institutional Fund XXVI Limited Partnership; PNC Multifamily Capital Institutional Fund XXX Limited Partnership; PNC Multifamily Capital Institutional Fund XXI Limited Partnership; Columbia Housing SLP Corporation; Eagles Landing Apartments, L.P.; April Woods Apartments, L.P.; and Harmony Woods Apartments, L.P. (collectively, "Plaintiffs").  Although there were numerous defendants before the trial court, the only appellant in this matter is defendant Bluff City Community Development Corporation (hereinafter, "Bluff City").  The founder, president, and executive director of Bluff City is an individual named Carl Mabry, who was also a defendant, but Mr. Mabry did not file a notice of appeal of the orders below.

On February 8, 2011, the parties then-remaining before the trial court, including Mr. Mabry, participated in a court-ordered judicial settlement conference, which was presided over by Chancellor Kenny Armstrong.  At the conference, an agreement was reached and a document reflecting the settlement terms was prepared and signed by all of the participating parties, including Mr. Mabry.  Thereafter, Plaintiffs' attorney prepared and circulated the formal settlement documentation, but Mr. Mabry refused to sign the formal settlement documents. On April 19, 2011, Plaintiffs filed a motion to enforce the settlement agreement, and an amended motion to enforce the settlement agreement was filed on April 20, 2011. Plaintiffs alleged that Mr. Mabry, Bluff City, and its affiliates had refused to approve the formal mutual settlement agreement documentation, despite the agreement reached at the judicial settlement conference.  The Plaintiffs asked the court to enforce the settlement agreement and to order the defendants to sign the related documentation.

Following a hearing, the trial court entered an order on July 8, 2011, granting the motion to enforce the settlement agreement. The court found that the agreement executed at the settlement conference was binding and enforceable. The trial court's order incorporated several documents and also expressly set forth various provisions of the settlement agreement, which, relevant to this appeal, provided:

Defendants Bluff City Community Development Corporation, Project Love Incorporated, Eagles Landing Apartments II, L.P., April Woods Apartments II, L.P., Carl Mabry, April Mabry, Jesse Briggs, Johnnie Briggs and their Affiliates release *any developer fee or any other fee* which are or were due to or claimed by these Defendants or their Affiliates, related to April Woods Apartments, L.P., Harmony Woods Apartments, L.P., or Eagles Landing Apartments, L.P., and release of any claim that same have not been assigned or transferred to Columbia Housing SLP Corporation. Bluff City Community Development Corporation, and Project Love Incorporated, and their Affiliates, have no remaining rights or interest, in the April Woods Partnership, the Eagles Landing Partnership, or the Harmony Woods Partnership, and will receive no further payments, repayments, offsets, or consideration of any kind or for any purpose (past, present or future), from or related to the April Woods Project, the Harmony Woods Project or the Eagles Landing Project. All such rights, title and interest, including rights to any such partnership interest or any fee, payments, repayments, offsets, or consideration, are vested in Columbia Housing SLP Corporation.

. . . .

*All development or other fees* under or pursuant to the April Woods II Partnership Agreement (Exhibit 3), shall not be paid to Bluff City Community Development Corporation or any Affiliate, including April Woods Development II, LLC, but shall instead be paid to Columbia Housing SLP Corporation as trustee. Provided, that solely in the event and solely to the extent that Bluff City Community Development Corporation is required to make a capital contribution to the April Woods II Partnership to pay any unpaid portion of the development fee pursuant to the following provision in section 6.12(a) of the April Woods II Partnership Agreement: ["If the Development Fee has not been fully paid by the tenth (10th) anniversary of the Completion Date, the General Partner shall make a Capital Contribution to the Partnership in an amount sufficient to enable the Partnership to pay any unpaid portion of the Development Fee"], then such development fee in the amount of such actual capital contribution made by Bluff City Community Development Corporation shall not be paid to Columbia Housing SLP Corporation as trustee.

(emphasis added). The trial court stated in its order that it was "retain[ing] continuing jurisdiction to enforce the terms of this Order, including the right to enforce or punish by contempt or otherwise any violation of this Order or interference with rights or conveyances provided by this Order." The order was certified as a final judgment pursuant to Tennessee Rule of Civil Procedure 54.02. Bluff City did not appeal the entry of this order.[1]

Six months later, the Plaintiffs filed a "Motion to Enforce Payments," in which they claimed that defendants April Woods Apartments II, L.P. ("April Woods II")[2], Bluff City, and Mr. Mabry were not in compliance with the trial court's July 8, 2011 order enforcing the settlement agreement. Specifically, they alleged that defendant April Woods II was paying "fees" of $3,000 per month to an affiliate of Bluff City (called Results Management, LLC), rather than to Columbia Housing SLP as trustee, as required by the July 8, 2011 order. According to Plaintiffs, the defendants had taken the position that these were "site management" fees, and not the "type" of fees addressed by the order. Plaintiffs argued that the order clearly addressed "all" fees. Plaintiffs asked the court to enforce its prior order by requiring that an amount equal to the fees improperly paid to Bluff City's affiliate be immediately paid to the trustee, and that April Woods II be ordered to make such future payments to the trustee as well. Plaintiffs pointed out that the trial court had specifically retained jurisdiction to enforce the terms of the July 8, 2011 order, by contempt or otherwise.

Following a hearing, the trial court entered an order on January 27, 2012, granting the Plaintiffs' "Motion to Enforce Payments." The court found that Mr. Mabry, Bluff City, and April Woods II were not in compliance with its previous order, as "payments of $3,000 per month have been made by April Woods II to an Affiliate of Bluff City, which payments should have been made to Columbia Housing SLP Corporation as trustee." The court noted that paragraph 8 of its previous order provided:

> *All* development *or other fees* under or pursuant to the April Woods II Partnership Agreement (Exhibit 3), shall not be paid to Bluff City Community Development Corporation or any Affiliate, . . . but shall instead be paid to Columbia Housing SLP Corporation as trustee. . . .

(Emphasis added). The court explained that its order specifically required April Woods II

---

[1] Defendant Carl Mabry filed a notice of appeal in his individual capacity. On appeal, this Court held that the trial court did not err in enforcing the signed settlement agreement against Mr. Mabry as a valid contract. *PNC*, 2012 WL 5897355, at *7.

[2] The general partner of defendant April Woods II was defendant Bluff City, whose president/executive director was defendant Carl Mabry.

"to (i) not make payments of fees to Bluff City or any Affiliate and (ii) to instead make such payments to Columbia Housing as trustee." The court found that "[s]ince February 2011, April Woods II has paid fees of $3,000 per month to Results Management LLC, an Affiliate [as defined in the previous order] of Bluff City." Thus, the court ordered that an amount equal to the fees paid to the affiliate in violation of the order, $33,000, be immediately paid by April Woods II and Bluff City, jointly and severally, to Columbia Housing as trustee. The court further ordered April Woods II to make such future payments to Columbia Housing as trustee.

On March 7, 2012, the trial court entered an order addressing some discovery issues. Among other things, the court ordered Bluff City to provide its responses to Plaintiffs' requests for production of documents on or before March 12, 2012. The court ordered Bluff City to separately respond to each and every request propounded upon it, to produce all of the requested documents in its possession, and for those documents not in its possession, to specifically state the location of those documents or the person who had possession of the documents. One day after the deadline, on March 13, 2012, defendant Carl Mabry filed what purported to be defendant Bluff City's "Responses," but which, in reality, only contained a general objection to the requests. Plaintiffs filed a motion to compel Bluff City to respond, asking the court to require Bluff City to comply with its previous discovery order and to provide the requested documents.

Thereafter, Plaintiffs filed a petition for contempt and for sanctions against Bluff City, Mr. Mabry, and April Woods, II, alleging that the defendants had continued to disobey the trial court's July 8, 2011 order, and disobeyed its January 27, 2012 order, by making additional $3,000 payments to an affiliate of Bluff City rather than to the trustee. Plaintiffs asked the trial court to enforce its orders through its contempt powers by holding Bluff City, April Woods II, and Mr. Mabry (as agent of Bluff City and April Woods II), in contempt.

On March 27, 2012, the trial court entered an order granting Plaintiffs' motion to compel Bluff City to respond to the aforementioned discovery requests. The court found that Bluff City had failed to comply with its March 7 order requiring responses by March 12, and therefore, the court ordered Bluff City to provide the requested responses on or before March 29, 2012, without any objections. The order stated that if Bluff City failed to comply by timely filing sufficient responses, the court would consider appointing a receiver for Bluff City. Bluff City filed its responses on March 29, 2012, but it objected to nearly all of the 39 requests for production, and stated that it "does not waive its objections to this needless, ongoing discovery."

On April 13, 2012, Bluff City filed a motion "to set aside, alter, or amend" the trial court's order granting the "Motion to Enforce Payments," entered on January 27, 2012, in which the trial court had ruled that the $3,000 "fees" were subject to paragraph 8 of the settlement agreement and that $33,000 was owed to the trustee. The motion alleged that relief was appropriate "pursuant to Rule 60" because, Bluff City argued, the trial court had erred in holding that the $3,000 fees were the "type" of fees subject to the settlement agreement. Bluff City also filed a response to the petition for contempt in which it argued, again, that neither Bluff City nor its affiliate had received the kind of fees that the settlement agreement addressed.

Effective April 24, 2012, the trial court appointed a receiver for Bluff City. The trial court's order stated that Bluff City, and its officer Mr. Mabry, had "repeatedly failed and refused to comply with, and demonstrated a disregard for, the Orders of this Court." In order to demonstrate such disregard, the court specifically listed eight of its previous orders which had included a previous finding of contempt, the granting of previous motions to compel, the "Motion to Enforce Payments," and other related matters involving Bluff City and Mr. Mabry. The court noted that its March 27, 2012 order (requiring responses by March 29 without objections) specifically warned Bluff City that if it failed to comply with the order, the court would consider appointing a receiver for the corporation. Nevertheless, the court stated, "Bluff City once again failed to comply with orders of this Court when it submitted deficient responses[.]" The court held that "[b]ecause of Bluff City's continuing pattern of misconduct and the most recent failure to comply with an Order of this Court, the Court has determined that appointment of a receiver is necessary and appropriate for the ends of justice." The court explained that "the appointment of a receiver is the necessary and appropriate remedy to ensure Bluff City's compliance with this Court's prior and subsequent Orders."

The trial court denied Bluff City's motion to "set aside, alter, or amend" the order granting the "Motion to Enforce Payments." The trial court also found Bluff City and April Woods II in willful contempt of its January 27, 2012 order directing the $3,000 payments to be made to the trustee. The court explained that its July 8, 2011 order enforcing the settlement agreement required "all development or other fees" to be paid to the trustee, not to Bluff City or its affiliates. The court noted that April Woods II subsequently paid fees of $3,000 per month to an affiliate of Bluff City, and it claimed that this was permissible because these fees were not covered by the July 8, 2011 order. The trial court noted that "on January 27, 2012, the Court entered an Order resolving that issue, and confirming that the payments of $3,000 per month were, in fact, covered by the July 8, 2011 Order." In that order, the court specifically directed that future payments of the $3,000 fee were to go to the trustee. Despite this explicit instruction, "[a]fter entry of the January 27, 2012 Order, April Woods II and its general partner, Bluff City, continued to refuse to make the required

payments to Columbia Housing SLP Corporation as trustee." The court found that April Woods II made the $3,000 fee payments to another affiliate of Bluff City, for the same services, in February, March, and April of 2012, totaling $9,000. The court found that the affiliate that received the payments was "a property management agent and conduit for Mabry, which immediately paid the funds to Mabry." The court found that "[t]hese Defendants willfully created a subterfuge in an effort to not pay the $3,000 per month as required by the Court's order and such conduct constitutes a willful violation of the Court's order." It further noted that "[t]hese Defendants are not getting the message that court orders are to be obeyed, and they are not to create subterfuges, and not to run around and attempt to get results that they want in spite of the Court's orders[.]" The court determined that Mr. Mabry should be incarcerated, as he was "the principal in Bluff City, which is the general partner of April Woods II, and the person who executed and received a benefit of the willful violation of the Court order." The court ordered Mr. Mabry incarcerated until he posted a $9,000 cash bond, "posted for the purpose of paying the money over as the previous Court's order required."

Defendant Bluff City timely filed a notice of appeal.

## II. ISSUES PRESENTED

Bluff City's brief on appeal lists the following issues for review:

1. Whether the trial court erred in appointing a receiver over Bluff City without holding an evidentiary hearing and as a sanction in a discovery dispute;
2. Whether the trial court erred in finding Bluff City in contempt of court and ordering its president incarcerated for allegedly violating a court order where Bluff [City] did not make payments and where payments were made pursuant to an independent contractor agreement; and
3. Whether the trial court abused its discretion in failing to set aside its order granting Plaintiffs' "Motion to Enforce Payments" pursuant to a tentative settlement agreement.

For the following reasons, we affirm the decision of the chancery court and remand for further proceedings as may be necessary.[3]

_____

[3] We note that Bluff City makes several other passing arguments throughout its brief in which it alleges that the trial court erred in various ways during the proceedings. However, we have focused our review on the three issues presented for review. "An item not listed as an issue presented for review is considered waived as this Court is under no obligation to search for, or derive, issues that are not specifically
(continued...)

## III. DISCUSSION

### A. *Appointment of a Receiver*

Bluff City's first issue presented on appeal is whether the trial court erred in appointing a receiver without holding an evidentiary hearing, and in the context of what Bluff City characterizes as a simple discovery dispute. However, in Bluff City's brief on appeal, it does not provide a single citation to the record with regard to this issue, and it does not cite any legal authority in support of its cursory argument. "'Courts have routinely held that the failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief as required by Rule 27(a)(7) constitutes a waiver of the issue.'" *Forbess v. Forbess*, 370 S.W.3d 347, 355 (Tenn. Ct. App. 2011) (quoting *Bean v. Bean*, 40 S.W.3d 52, 55-56 (Tenn. Ct. App. 2000)); *see also* **Tellico Village Property Owners Ass'n, Inc. v. Health Solutions, LLC**, No. E2012-00101-COA-R3-CV, 2013 WL 362815, at *3 (Tenn. Ct. App. Jan. 30, 2013) ("'Where a party makes no legal argument and cites no authority in support of a position, such issue is deemed to be waived and will not be considered on appeal.'") (quoting *Hawkins v. Hart*, 86 S.W.3d 522, 531 (Tenn. Ct. App. 2001)). Moreover, we have no transcript of the hearing at which the trial court considered Plaintiffs' motion to compel and decided to appoint a receiver, and there is nothing in the record to suggest that Bluff City ever requested an evidentiary hearing before the trial court. **Barnes v. Barnes**, 193 S.W.3d 495, 501 (Tenn. 2006) ("Issues not raised in the trial court cannot be raised for the first time on appeal."). As a result of these deficiencies, we find that Bluff City has waived review of this issue.

---

[3](...continued)
stated in accordance with Rule 27(a)(4)." *Coleman v. Lauderdale County*, No. W2011-00602-COA-R3-CV, 2012 WL 475606, at *3 n.4 (Tenn. Ct. App. Feb. 15, 2012) (citing *Childress v. Union Realty Co.*, 97 S.W.3d 573, 578 (Tenn. Ct. App. 2002)).

Similarly, we will not review the issues raised for the first time by Bluff City in its reply brief. *Pickard v. Tenn. Dep't of Environment & Conservation*, No. M2011-02600-COA-R3-CV, 2012 WL 3834777, at *19 (Tenn. Ct. App. Sept. 4, 2012) ("arguments raised for the first time in reply briefs are likewise considered waived by this Court").

### B. Contempt

With regard to the trial court's contempt ruling, Bluff City cites only one case in support of its argument, which it cites as follows:

> . . . The evidence preponderates against the trial court's finding, and the trial court abused its discretion in holding Bluff City in contempt. *See Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008).

The substantive basis for Bluff City's argument as to why it should not have been held in contempt is that the $3,000 fees were not the type of fees that were subject to the parties' settlement agreement. This argument misses the point. After the trial court entered its July 8, 2011 order enforcing the settlement agreement and providing that "all development or other fees" would be paid to the trustee rather than to Bluff City or its affiliates, the Plaintiffs filed their "Motion to Enforce Payments" seeking a determination as to whether the $3,000 fees were subject to the aforementioned provision of the settlement agreement. The trial court entered an order on January 27, 2012, specifically resolving that issue. Following a hearing, of which we have no transcript, the trial court found that the $3,000 fee payments "should have been made to Columbia Housing SLP Corporation as trustee." The January 27, 2012 order noted that the plain language of the July 8, 2011 order addressed "*All* development *or other fees*" (emphasis by the trial court), and as a result, April Woods II was required "to (i) not make payments of fees to Bluff City or any Affiliate and (ii) to instead make such payments to Columbia Housing as trustee." The court explicitly ordered April Woods II to make such future payments to Columbia Housing as trustee. In the three months immediately following the January 27, 2012 order, additional $3,000 payments were made to a different affiliate of Bluff City, in clear violation of the trial court's direct instructions. Bluff City was not at liberty to simply ignore the trial court's order based upon its opinion that the trial court was incorrect.

> 'The disobedience of a valid, though erroneous and reversible, order is a contempt of court. As long as the court has jurisdiction of the person and subject matter, its order is valid, though it be erroneous, and disobedience of the order is a contempt of court. A court's order can be disregarded only when the court goes so clearly and so far outside its jurisdiction as to act, not as a court, but as a usurper, so as to render its order void. The principle underlying the court's contempt powers, i.e. the court must be able to maintain the integrity of its orders, is so strong that even erroneous orders must be obeyed at the risk of a contempt citation.'

*State v. Ramos*, No. M2007-01766-CCA-R3-CD, 2009 WL 890877, at *4 (Tenn. Crim. App. Apr. 2, 2009) *perm. app. denied* (Tenn. Aug. 31, 2009) (quoting *State v. Jones*, 1985 WL 4229 *7-8 (Tenn. Crim. App. Nov. 27, 1985) (Riley, Sp. J., concurring) *aff'd by* 726 S.W.2d 515 (Tenn. 1987)). "In short, a court order, even if erroneous or subject to reversal on appeal, must be followed until it is reversed." *Id.* (citing *Konvalinka*, 249 S.W.3d at 357). "It is well-settled in Tennessee that if the Court has jurisdiction of the person and of the subject matter, it is a valid order though it be erroneous, and disobedience of same by a party affected is a contempt of court." *Flautt & Mann v. Council of City of Memphis*, 285 S.W.3d 856, 874 (Tenn. Ct. App. 2008) (quotation omitted). Thus, it is no defense to Bluff City that, in its view, the order it disobeyed was incorrectly decided.

### C.     The Motion to Set Aside, Alter or Amend

Finally, Bluff City argues that the trial court abused its discretion in denying Bluff City's April 13, 2012 motion to set aside, alter or amend the January 27, 2012 order granting Plaintiffs' "Motion to Enforce Payments." The challenged order held that the $3,000 fee payments were subject to the settlement agreement. Bluff City argues that the order should have been set aside pursuant to Rule 60.02 because "[i]t is clear from the evidence that on-site property management fees were not and should not have been included in the settlement agreement." To recap, the trial court's order enforcing the settlement agreement provided, in pertinent part:

> *All development or other fees* under or pursuant to the April Woods II Partnership Agreement (Exhibit 3), shall not be paid to Bluff City Community Development Corporation or any Affiliate, including April Woods Development II, LLC, but shall instead be paid to Columbia Housing SLP Corporation as trustee. Provided, that solely in the event and solely to the extent that Bluff City Community Development Corporation is required to make a capital contribution to the April Woods II Partnership to pay any unpaid portion of the development fee pursuant to the following provision in section 6.12(a) of the April Woods II Partnership Agreement: ["If the Development Fee has not been fully paid by the tenth (10th) anniversary of the Completion Date, the General Partner shall make a Capital Contribution to the Partnership in an amount sufficient to enable the Partnership to pay any unpaid portion of the Development Fee"], then such development fee in the amount of such actual capital contribution made by Bluff City Community Development Corporation shall not be paid to Columbia Housing SLP Corporation as trustee.

(Emphasis added). We agree with the trial court's conclusion that the plain language of this

provision requires "all development or other fees" to be paid to the trustee, with the exception of a certain type of development fee not relevant here.

Bluff City claims that "the trial court erred in concluding that the management fees were made pursuant to the April Woods II Partnership Agreement and not the independent contractor agreement[.]" Although the relevant provision of the order enforcing the settlement agreement does address "any development or other fees *under or pursuant to the April Woods II Partnership Agreement*" (emphasis added), Bluff City admitted in its motion to set aside, alter or amend, filed before the trial court, that the April Woods II Partnership Agreement "defines three types of fees: 1) 'Asset Management Fees,' . . . 2) 'Development Fee[s],' . . . and 3) 'Management Fee[s],' which are those fees payable to a third-party property management agent pursuant to a property management contract." In other words, Bluff City admitted in its motion that the April Woods II Partnership Agreement expressly provided for such "management fees." The April Woods II Partnership Agreement does not appear to be in the record before us on appeal, and Bluff City has not cited to any portion of the record in this section of its brief to cause us to believe otherwise. Consequently, we find that the trial court did not err in refusing to set aside its previous order finding that the $3,000 "management" fee payments were subject to the settlement agreement.

## IV. CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court and remand for further proceedings as may be necessary. Costs of this appeal are taxed to the appellant, Bluff City Community Development Corporation, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.