# IN THE COURT OF APPEALS OF TENNESSEE
# AT KNOXVILLE
### April 14, 2021 Session

## MARY HANES LANCASTER LOCKETT v. MARC KEVIN RUNYAN SR.

**Appeal from the Chancery Court for Washington County**
**No. 19-DM-0305    John C. Rambo, Chancellor**

_____

### No. E2020-01343-COA-R3-CV

_____

Appellant/Wife filed a petition for civil contempt against Appellee/Husband alleging that Husband failed to make payments on a debt owed to Wife as required under the parties' Marital Dissolution Agreement ("MDA"). The trial court: (1) held that the MDA was ambiguous; (2) entered judgment for Wife in the amount of $14,636.66; (3) held that Husband was not in contempt of the MDA; and (4) denied Wife attorney's fees and costs under the MDA. We conclude that the MDA was not ambiguous and that the trial court erred in allowing parol evidence of payments Husband allegedly made prior to executing the MDA. Accordingly, we: (1) reverse the trial court's finding that the MDA is ambiguous; (2) reverse and modify the trial court's entry of judgment for Wife in the amount of $14,636.66; (3) vacate the trial court's finding that Husband was not in contempt; and (4) reverse the trial court's denial of Wife's request for attorney's fees and costs. We remand the case for: (1) entry of judgment in favor of Wife in the amount of $82,000.00 plus post-judgment interest; (2) reconsideration of the question of Husband's contempt; and (3) calculation of Wife's reasonable attorney's fees, costs, and expenses incurred in the litigation, including this appeal, and entry of judgment on same.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
### Reversed in Part, Vacated in Part, and Remanded

KENNY ARMSTRONG, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and J. STEVEN STAFFORD, P.J., W.S., joined.

Jason A. Creech and Matthew Fisher Battis, Johnson City, Tennessee, for the appellant, Mary Hanes Lancaster Lockett.

David N. Darnell, Kingsport, Tennessee, for the appellee, Marc Kevin Runyan, Sr.

# OPINION

## I. Background

Appellant Mary Hanes Lancaster Lockett ("Wife") and Appellee Marc Kevin Runyan, Sr. ("Husband") married on February 25, 2014. During the marriage, Wife loaned Husband approximately $200,000.00, and Husband paid approximately half of this amount back to her during the marriage.

On April 23, 2019, Wife and Husband executed an MDA, which was incorporated by reference into the Chancery Court of Washington County's ("trial court") Final Decree of Divorce, which was entered on June 25, 2019. As is relevant to the instant appeal, the MDA provides:

> 9. DEBTS. Husband acknowledges he owes Wife the sum of $100,000.00 for a personal loan Wife made to Husband during the marriage. Husband shall be responsible for paying back said loan in monthly installments in the amount of $2,500.00 per month beginning May 1, 2019 and on the 1st of each month thereafter until such time as the loan is paid off. Husband shall set up payment of said monthly payment by auto-withdrawal from his Bank of Tennessee account to Wife's Merrill Lynch account. Wife agrees to waive the previously agreed upon 10% interest rate.

On July 5, 2019, Wife filed a Petition for Civil Contempt against Husband, wherein she alleged that Husband was in contempt for failure to make the $2,500.00 payments in May and June of 2019. Based on Husband's failure to pay the required amounts, Wife asked the trial court to: (1) hold Husband in contempt; (2) award her arrears for the two missed payments; and (3) award her attorney's fees.

On August 19, 2019, Husband filed a response to Wife's motion for contempt. Therein, Husband did not deny failing to make the required payments in May and June 2019. Rather, Husband averred that he had suffered a "significant decline in business income" and was, thus, unable to make his monthly payments of $2,500.00. Husband disclaimed any contempt because his actions were not willful and asked the trial court to temporarily reduce his monthly payments to $1,000.00 for 6 months, beginning September 2019. On September 16, 2019, the trial court entered an agreed order allowing Husband to pay $1,000.00 per month for a period of 6 months. The trial court specified that the agreed order was not meant to alter or modify the parties' MDA or the Final Decree of Divorce.

On August 21, 2020, Wife filed a "Supplement to Petition for Civil Contempt and Motion to Enforce Marital Dissolution Agreement," wherein she alleged that,

[t]o date, Husband was supposed to have paid Wife the total sum of $31,000 from May 1, 2019 to August 1, 2020. However, Husband has paid only $18,000 as follows:

a. May 2019—$0 (stopped payment)
b. June 2019—$0 (stopped payment)
c. July 2019—$2,500
d. August 2019—$2,500
e. September 2019—$2,500
f. October 2019—$3,500
g. November 2019—$3,500
h. December 2019—$3,500
i. January 2020—$0
j. February 2020—$0
k. March 2020—$0
l. April 2020—$0
m. May 2020—$0
n. June 2020—$0
o. July 2020—$0
p. August 2020—$0
q. September 2020—unknown as of the date of the filing of this motion.

For a period of three months, Husband was inadvertently paying both the $1,000 modified payment and his regular $2,500 payment. Upon Husband's discovery of this issue, Husband stopped his monthly payment.

Based on the foregoing averments, Wife asked the trial court to award her judgment for the amount of Husband's arrears, interest, and attorney's fees and costs.

On August 31, 2020, Husband filed an "Amended Response to Petition for Contempt and Motion by Defendant/Respondent for Court to Determine if Any Funds are Owed to the Plaintiff Pursuant to the MDA." Therein, Husband reiterated his previous claim that, due to the change in his income, he was unable to pay $2,500.00 per month. Furthermore, for the first time, Husband alleged that he had, in fact, overpaid Wife on the loans she made to him during the marriage. Specifically, Husband alleged that he "had paid prior to the MDA being signed $90,400 on the past loan from [Wife]. The MDA contemplated only paying what was owed on the $100,000.00 original loan from [Wife]. Since the signing of the MDA[, Husband] has paid $18,000 toward the loan balance and has overpaid [Wife]." In support of his contention, Husband attached, to his response, a chart depicting payments he made to Wife in varying amounts dating back to 2014. All but five of these payments occurred prior to the execution of the MDA.

On September 4, 2020, Wife filed a response, wherein she argued that "any prior agreements the parties may have had during the divorce proceeding or marriage were superseded by the [MDA]," and if "[Husband] had any objection to the payment obligation in the MDA based on other debts or agreement made during the marriage, he should have explored that during the divorce proceeding" before he signed the MDA.

Following a hearing on September 8, 2020, the trial court entered an order on September 21, 2020, wherein it held that the MDA was ambiguous. Based on parol evidence, the trial court determined that Husband had made payments toward the $100,000.00 loan prior to the execution of the MDA, such that the balance owed was $14,636.66. The trial court declined to hold Husband in contempt because his monthly income rendered him unable to make the required payments. The trial court also denied Wife's request for attorney's fees under the MDA. Wife appeals.

## II. Issues

Wife raises five issues for review as stated in her brief:

1. Whether the trial court erred in finding the parties' contract was "ambiguous."

2. Whether the trial court erred in considering parol evidence to alter, vary, and/or contradict the terms of the parties' contract.

3. Whether the trial court erred in rewriting the parties' contract for them based on parol evidence.

4. Whether the trial court erred in failing to make a finding of civil contempt.

5. Whether the trial court erred in failing to award attorney fees.

In the posture of Appellee, Husband contends that his remaining debt obligation to Wife should be reduced to $7,136.66.

## III. Standard of Review

We review a non-jury case *de novo* upon the record, with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); **Bowden v. Ward**, 27 S.W.3d 913, 916 (Tenn. 2000). We review questions of law *de novo* with no presumption of correctness. **Bowden**, 27 S.W.3d at 916 (citing **Myint v. Allstate Ins. Co.**, 970 S.W.2d 920, 924 (Tenn. 1998)); *see also* **In re Estate of Haskins**, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006).

- 4 -

## IV. Whether the Parties' MDA is Ambiguous and Parol Evidence

Marital dissolution agreements are contractual and, once approved by the trial court, "become legally binding obligations on the parties." *Long v. McAllister-Long*, 221 S.W.3d 1, 8-9 (Tenn. Ct. App. 2006), *perm. app. denied* (Tenn. Jan. 29, 2007) (explaining that "the agreements in a marital dissolution agreement are enforceable contract obligations"). We review issues of contract interpretation *de novo*. *See Dick Broad. Co. of Tenn. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013). As this Court has previously explained:

> In resolving a dispute concerning contract interpretation, our task is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contract language. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 889-90 (Tenn. 2002) (citing *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999)). A determination of the intention of the parties "is generally treated as a question of law because the words of the contract are definite and undisputed, and in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide." *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)). The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. *Planters Gin Co.*, 78 S.W.3d at 890. The parties' intent is presumed to be that specifically expressed in the body of the contract. "In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule of law, good morals, or public policy." *Id*. (quoting 17 Am. Jur. 2d, *Contracts*, § 245).

*Kafozi v. Windward Cove, LLC*, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Jan. 30, 2006). To fully ascertain the parties' intent, courts must first determine whether the contract, or particular language therein, is ambiguous. *See Planters Gin Co.* 78 S.W.3d at 890. "Contractual language 'is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one.'" *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006) (quoting *Planters Gin Co.*, 78 S.W.3d at 890). If the contract language in question is unambiguous, the contract is considered fully integrated, and the literal meaning controls the outcome of the dispute. *Watson*, 195 S.W.3d at 611. However, when contractual language is ambiguous, the parol evidence rule allows pre-contract negotiations or actions to give meaning to the ambiguous language. *Id.* at 612.

The trial court concluded that the language, "Husband acknowledges he owes Wife the sum of $100,000.00 for a personal loan Wife made to Husband during the marriage," created an ambiguity in Section 9 of the MDA. Specifically, the trial court held:

> The Court finds that Section 9 of the Marital Dissolution Agreement is ambiguous as written because:
>
> a. Section 9 uses the singular "loan" rather than referencing various loans as was testified to by the parties. Section 9 should have stated the existence of multiple loans rather than a singular loan, and as such, it lacks clarity.

Respectfully, the trial court's reasoning is flawed. "Contractual language 'is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one.'" *Id.* at 611 (quoting *Planters Gin Co.*, 78 S.W.3d at 890). The fact that the MDA uses the "singular 'loan' rather than referencing various loans" is not material to the question of what Husband owed to Wife at the time of the execution of the MDA. Whether the amount owed was comprised of several loans or one, Husband clearly acknowledge that, at the time of the MDA, he owed Wife $100,000.00, i.e., "Husband acknowledges he owes Wife the sum of $100,000.00." Contrary to the trial court's finding, the gravamen is the amount owed by Husband to Wife at the time of the execution of the MDA and not how that amount came to be. The contractual language is not ambiguous as it clearly established that Husband owed Wife $100,000.00 at the time he executed the MDA. This Court previously held that an MDA was unambiguous even though it failed to state the balance owed on a loan and significant dates regarding that loan. *See Ament v. Wynne*, No. M2004-01876-COA-R3-CV, 2007 WL 2376333, *4-5 (Tenn. Ct. App. Aug. 20, 2007) (holding that, even though the MDA failed to reference loan numbers or dates, the agreement was still unambiguous).

Despite the fact that the amount owed under the MDA was not ambiguous, the trial court found that:

> The evidence presented from Exhibits 2 and 3, as well as the testimony of Ex-Husband, showed that during the marriage, prior to the execution of the Marital Dissolution Agreement, Ex-Husband paid Ex-Wife $90,400. After execution of the Marital Dissolution Agreement, Ex-Husband paid Ex-Wife payments totaling $18,000. Most payments made prior to the parties' execution of the Marital Dissolution Agreement were for $2,500.00 per month, which was consistent with the payments as indicated in the Marital Dissolution Agreement of $2,500.00 per month. This is the best evidence that Section 9 is ambiguous.

- 6 -

Respectfully, the trial court erred in allowing Husband to introduce parol evidence in the form of payments he allegedly made prior to the execution of the MDA, i.e., Exhibits 2 and 3. Only if contractual language is determined to be ambiguous, may parol evidence, or pre-contract negotiations, be used "to guide the court in construing and enforcing the contract." *Watson*, 195 S.W.3d at 612. The parol evidence rule's applicability is highly-restricted if the contract is fully integrated. *See Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tennessee, Inc.*, 566 S.W.3d 671, 695-96 (Tenn. 2019) (explaining that even negotiations "within the scope of the agreement in a way that would supplement or limit its terms" are not considered). Regardless of whether the contract is partially or fully integrated, the parol evidence rule cannot be used to contradict the contract's terms. *Id.* Here, the MDA is clear. Husband acknowledged a debt of $100,000.00 when he signed the MDA, and he agreed to pay "back said loan in monthly installments in the amount of $2,500.00 per month **beginning May 1, 2019** and on the 1st of each month thereafter until such time as the loan is paid off . . . ." (Emphasis added). Relying on Husband's parol evidence, the trial court found that "prior to the execution of the Marital Dissolution Agreement, Ex-Husband paid Ex-Wife $90,400." Based on the fact that the $90,400.00 in payments was comprised of monthly payments of $2,500.00, the trial court inferred that these payments should be applied to the $100,000.00 contemplated in the MDA. We disagree. The plain language of the MDA states that Husband's repayment of the $100,000.00 will commence on May 1, 2019. There is nothing in the MDA to suggest that Husband owed anything less than $100,000.00 at the time of its execution or that he had made any payments toward this amount prior to May 1, 2019. So, not only did the trial court err in allowing parol evidence concerning any payments made prior to May 1, 2019, but it also erred in inferring that Husband owed less than $100,000.00 when the parties executed the MDA.

The record shows that Wife, in fact, loaned Husband approximately $200,000.00 during the marriage. The evidence further shows that the $90,400.00 in payments Husband made prior to the execution of the MDA went toward paying off the $200,000.00 debt such that the $100,000.00 amount stated in the MDA represents the remaining amount Husband owed on the initial $200,000.00 debt at the time the parties executed the MDA. Nonetheless, the trial court held that

> Ex-Husband presented proof that he paid Ex-Wife $90,400 from November 2014 through the date of the Marital Dissolution Agreement, and he further paid $18,000 after execution of the Marital Dissolution Agreement. Ex-Husband testified and presented evidence that, if the Court takes into account his total payments to date of $108,400 at 10% interest per annum from November 2014, when he first began such payments, Ex-Husband only owes Ex-Wife the sum of $14,636.66 pursuant to Section 9 of the Marital Dissolution Agreement, subject to post-judgment interest to accrue at 10% interest per annum.

By erroneously allowing parol evidence of payments Husband made prior to the May 1, 2019 commencement date contemplated in the MDA, the trial court credited Husband with payments on a debt that ostensibly had not yet been created. The trial court's reading not only ignores the plain language of Section 9, but it also ignores Section 13(l) of the MDA, which states that, "This Agreement constitutes the entire understanding of the parties, **and it supersedes any and all prior agreements between them**." (Emphasis added). Under the plain language of the MDA, regardless of any payments or agreements made prior to the execution of the MDA, Husband owed Wife $100,000.00 as of the date of the execution of the MDA. The parties agreed that Husband would pay this debt in monthly installments of $2,500.00 commencing on May 1, 2019. These terms are not ambiguous, and Husband is entitled to reduction of the $100,000.00 debt only for payments made on or after May 1, 2019.

Exhibit 2, which was tendered by Husband, shows that Husband's payments after May 1, 2019 totaled $18,000.00. As such, Husband still owes Wife $82,000.00 on the $100,000.00 debt. Accordingly, we reverse and modify the trial court's judgment in the amount of $14,636.66 and remand for entry of judgment for Wife in the amount of $82,000.00. To the extent that neither party raises an issue concerning the trial court's application of post-judgment interest in the amount of 10% per annum, we leave that portion of the trial court's order undisturbed. On remand, the trial court should apply post-judgment interest to the $82,000.00 judgment.

## V. Contempt

Wife appeals the trial court's determination that Husband was not in contempt of the MDA. Specifically, the trial court held that

> [e]ven if Section 9 of the Marital Dissolution Agreement is unambiguous, Ex-Husband is not earning enough money to pay Ex-Wife $2,500 per month and thus does not have the ability to pay because he presently only earns approximately $4,000 per month from his businesses. Therefore, Ex-Husband is not "willfully" in contempt of Section 9 of the Marital Dissolution Agreements, as incorporated into the Final Decree of Divorce.

"With respect to a trial court's findings of civil contempt, the factual issues of whether a party violated an order and whether a particular violation was willful, are reviewed *de novo*, with a presumption of correctness afforded the trial court's findings." **Lovlace v. Copley**, 418 S.W.3d 1, 17 (Tenn. 2013) (citing **Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.**, 249 S.W.3d 346, 356-57 (Tenn. 2008)). The decision to hold a party "in civil contempt is reviewed using the abuse of discretion standard." **Id.** "A court abuses its discretion when it causes an injustice to the party challenging the decision by (1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." **Lee Med., Inc. v. Beecher**,

312 S.W.3d 515, 524 (Tenn. 2010).

To prevail on a civil contempt claim, the plaintiff must establish four elements: (1) the order alleged to have been violated is lawful; (2) the order alleged to have been violated must be clear, specific, and unambiguous; (3) the plaintiff must prove by preponderance of the evidence that the defendant actually violated the order; and (4) the defendant violated the order willfully. *See* **Cowan v. Cowan**, No. W2019-00179-COA-R3-CV, 2020 WL 1966322, at *3 (Tenn. Ct. App. Apr. 24, 2020) (citing **Konvalinka**, 249 S.W.3d at 354-55); **Scobey v. Scobey**, No. M2016-00963-R3-CV, 2017 WL 4051085, at *3 (Tenn. Ct. App. Sep. 13, 2017).

Having determined above that the parties' MDA is not ambiguous, the trial court is not precluded from finding Husband in contempt of that agreement. It is undisputed that Husband consistently failed to make the $2,500.00 payments under the terms of the original MDA; he also consistently failed to pay the reduced amount of $1,000.00 under the agreed order. Nonetheless, the trial court held, *supra*, that Husband's failure to make these payments was not contemptuous because it was not willful. In making this finding, the trial court focused solely on Husband's monthly income, but it did not consider any of his other assets. This was error. Accordingly, we vacate the trial court's finding that Husband was not in contempt of the MDA and remand for the trial court to reconsider the question of Husband's contempt in view of his income **and** assets.

## VI. Attorney's Fees

Section 13(g) of the MDA provides, in relevant part, that:

Should either party fail to abide by or perform the agreements herein, he or she shall be liable to the other party for all reasonable attorney fees, costs, and expenses incurred by the other in securing performance.

The trial court denied Wife's request for attorney's fees and costs; specifically, the trial court held that, "The request for attorney's fees and prejudgment interest . . . by Ex-wife is denied because Section 9 is ambiguous." Having determined that the MDA is not ambiguous, we reverse the trial court's denial of Wife's attorney's fees and costs. As noted above, it is undisputed that Husband consistently failed to make the required payments toward the $100,000.00 debt; as such, Section 13(g) of the MDA is triggered, and Wife is entitled to her "reasonable attorney fees, costs, and expenses" incurred in the litigation including costs of this appeal. We remand the case to the trial court for determination of Wife's reasonable attorney's fees, costs and expenses and entry of judgment for same.

## VII. Conclusion

For the foregoing reasons, we: (1) reverse the trial court's finding that Section 9 of the MDA is ambiguous; (2) reverse and modify the trial court's $14,636.66 judgment in favor of Wife; (3) vacate the trial court's finding that Husband was not in contempt; and (4) reverse the trial court's denial of Wife's request for attorney's fees, costs and expenses incurred in the litigation. This case is remanded for: (1) entry of judgment in favor of Wife in the amount of $82,000.00 plus post-judgment interest; (2) reconsideration of the question of Husband's contempt; (3) calculation of Wife's attorney's fees, costs, and expenses incurred in the litigation, including the appeal, and entry of judgment for same. Costs of the appeal are assessed to the Appellee, Marc Kevin Runyan, Sr., for all of which execution may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE