**ALLSTATE INSURANCE COMPANY**

v.

**Robert E. WATSON.**

Supreme Court of Tennessee,
at Nashville.

Feb. 2, 2006 Session.

July 11, 2006.

John R. Cheadle, Jr., Nashville, Tennessee, for the appellant-plaintiff, Allstate Insurance Company.

E. Todd Presnell and John L. Farringer IV, Nashville, Tennessee, and Jamie D. Winkler, Carthage, Tennessee, for the appellee-defendant, Robert E. Watson.

### OPINION

JANICE M. HOLDER, J., delivered the opinion of the court, in which WILLIAM M. BARKER, C.J., and E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., and CORNELIA A. CLARK, JJ., joined.

Plaintiff, the landlord's insurance company, paid the landlord for fire loss and brought suit against the tenant asserting its subrogation rights. The lease provided that the tenant would be "responsible for all damages to the apartment, intentional or non intentional." The trial court found that the tenant did not intentionally or negligently cause the fire damage but held that the tenant was liable for the damage under the terms of the lease. The Court of Appeals reversed the judgment of the trial court and held, sua sponte, that a landlord's insurer has no right of subrogation against a tenant because the tenant and landlord are deemed co-insureds. We hold that the lease provides for liability only for intentional or negligent acts of the

tenant. Because there is no basis for subrogation, we do not reach the issue of whether the landlord and tenant are co-insureds. Accordingly, we affirm the Court of Appeals' dismissal of this case.

## I. Factual and Procedural Background

The defendant, Robert E. Watson ("Watson"), leased a unit of a duplex owned by Kevin W. Williams ("Williams") in Nashville, Tennessee. The lease provided that Watson would be "responsible for all damages to the apartment, intentional or non intentional." The lease was silent, however, as to the obligation of either party to obtain fire insurance covering the leased premises. Williams procured a fire insurance policy on the duplex through Allstate Insurance Company ("Allstate"), the plaintiff in this case. On June 15, 1998, a fire caused damage to the duplex in the amount of $25,788.47. Allstate paid the loss to its insured, Williams, and brought suit against Watson asserting its subrogation rights.

The trial court found that Watson did not intentionally or negligently cause the fire, a conclusion neither party disputes. Relying upon the language of the lease, however, the trial court found Watson to be strictly liable for the damage to the property and enforced Allstate's right of subrogation. The Court of Appeals reversed the judgment of the trial court and held, sua sponte, that a landlord's insurer has no right of subrogation against a tenant because the tenant and landlord are deemed co-insureds. We granted review.

## II. Analysis

We resolve this case on the basis of the lease itself. The interpretation of written agreements, like the lease at issue, is a matter of law that this Court reviews de novo on the record according no presumption of correctness to the trial court's conclusions of law. *See Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn.1999); *Union Planters Nat'l Bank v. Am. Home Assurance Co.*, 865 S.W.2d 907, 912 (Tenn. Ct.App.1993). A cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties. *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn.2005). In interpreting contractual language, courts look to the plain meaning of the words in the document to ascertain the parties' intent. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889–90 (Tenn.2002). This Court's initial task in construing the lease at issue is to determine whether the language is ambiguous. *Id.* at 890. If the language is clear and unambiguous, the literal meaning controls the outcome of the dispute. *Id.* If, however, the words in a contract are susceptible to more than one reasonable interpretation, the parties' intent cannot be determined by a literal interpretation of the language. *Id.*

Contractual language "is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one." *Farmers–Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975). The lease provides that Watson is responsible "for all damages . . . intentional or non intentional." "[N]on intentional" could mean that Watson is strictly liable for all damages to the leased premises, as the trial court found. This same language also suggests, especially to a reasonable lay person, that Watson is liable only for intentionally or negligently caused damages. We therefore conclude that the phrase "intentional or non intentional" is ambiguous.

When contractual language is found to be ambiguous, the court must apply established rules of construction to determine the intent of the parties.

*Planters Gin Co.,* 78 S.W.3d at 890. An ambiguous provision in a contract generally will be construed against the party drafting it. *Hanover Ins. Co. v. Haney,* 221 Tenn. 148, 425 S.W.2d 590, 592 (1968); *Vargo v. Lincoln Brass Works, Inc.,* 115 S.W.3d 487, 492 (Tenn.Ct.App.2003). Furthermore, when a contractual provision is ambiguous, a court is permitted to use parol evidence, including the contracting parties' conduct and statements regarding the disputed provision, to guide the court in construing and enforcing the contract. *See Memphis Housing Auth. v. Thompson,* 38 S.W.3d 504, 512 (Tenn.2001); *Fidelity–Phenix Fire Ins. Co. of New York v. Jackson,* 181 Tenn. 453, 181 S.W.2d 625, 631 (1944); *Vargo,* 115 S.W.3d at 494.

In the present case, both Watson and the party who drafted the lease on behalf of Williams, Charlie Pope, Jr. ("Pope"), a non-lawyer, stated that it was not their intent that Watson be liable for damage to the property that Watson did not intentionally or negligently cause. In an affidavit, Pope stated that the lease "was intended to hold the tenant responsible for damages that occurred based on some degree of fault on their [sic] part." Unlike the trial court, we do not construe the word "non intentional" to be so broad as to make the tenant, Watson, strictly liable for *all* damages. Instead, we conclude that the language at issue was intended by the parties to impose liability upon Watson only for damages he intentionally or negligently caused.

█ The evidence does not preponderate against the trial court's ruling that Watson did not intentionally or negligently damage the rental property, which is presumed correct. *See* Tenn. R.App. P. 13(d). Because Watson is not liable to Williams under the lease, Allstate is afforded no recovery. There is no right of subrogation allowing Allstate to proceed against Wat-

son unless Watson is liable to Williams in the first instance. *See York v. Sevier County Ambulance Auth.,* 8 S.W.3d 616, 618–19 (Tenn.1999) (explaining that "[i]n the context of insurance, subrogation allows the insurer to 'stand in the shoes' of the insured and assert the rights the insured had against a third party"). Because there is no right of subrogation in this matter, we do not decide whether Watson is an implied co-insured under Williams' fire insurance policy with Allstate, a theory of recovery that was not raised at trial.

## III. Conclusion

We construe the damages provision of the lease to provide for liability only in the case of intentional or negligent damage by Watson. Because Watson did not intentionally or negligently cause the fire damage to the leased premises, there is no basis for Allstate's subrogation action against him. We therefore affirm the Court of Appeals' dismissal of this case. Costs of this appeal are taxed to the appellant, Allstate Insurance Company, and its surety, for which execution may issue if necessary.