# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
November 8, 2012 Session

## J-STAR HOLDINGS, LLC v. THE PANTRY, INC.

**Appeal from the Chancery Court for Rutherford County**
**No. 11cv19     Robert E. Corlew, III, Chancellor**

**No. M2012-01035-COA-R3-CV - Filed January 2, 2013**

This appeal turns on whether a commercial lease agreement requires the tenant to pay the landlord's Tennessee excise tax. We agree with the conclusion reached by the trial court that the lease does require the tenant to pay the excise tax.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which PATRICIA J. COTTRELL, M.S., P.J., and FRANK G. CLEMENT, JR., J., joined.

Carolyn W. Schott and Joshua A. Mullen, Nashville, Tennessee, for the appellant, The Pantry, Inc.

Andree S. Blumstein and John Lee Farringer, IV, Nashville, Tennessee, for the appellee, J-Star Holdings, LLC.

## OPINION

### FACTUAL AND PROCEDURAL BACKGROUND

In October 2003, Crestnet 1, landlord, entered into a lease with The Pantry, tenant. In December 2003, Crestnet sold the leased property and assigned the lease to J-Star Holdings, Inc. ("J-Star"). The leased property, which is located in Rutherford County, Tennessee, is used by The Pantry for a gas station and convenience store.

The current dispute arose in 2010 when J-Star demanded that The Pantry pay J-Star's 2009 Tennessee excise tax. The Pantry denied liability for the excise tax, and J-Star filed this lawsuit in January 2011 for breach of contract and a declaratory judgment that The Pantry was liable to J-Star for its 2009 Tennessee excise tax and all future excise taxes. The parties

filed cross-motions for summary judgment and joint stipulations of material facts. In an order entered on September 30, 2011, the trial court granted J-Star's motion for summary judgment, but reserved the issue of pre-judgment interest, late charges, costs and attorney fees.

On April 3, 2012, the trial court entered an order finding The Pantry liable to J-Star for reasonable costs and attorney fees, late charges, and interest. The court went on to rule, however, that only $40,000 of J-Star's attorney fees would be shifted to The Pantry. The Pantry appealed.

On appeal, The Pantry asserts that the trial court erred (1) in finding it obligated under the lease agreement to pay J-Star's Tennessee excise tax and (2) in awarding J-Star attorney fees. J-Star asserts that the trial court erred in limiting the attorney fee award to $40,000 and requests its attorney fees on appeal.

STANDARD OF REVIEW

The interpretation of a lease, or any contract, presents a question of law. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006); *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn.1999). Thus, our review is de novo with no presumption of correctness as to the trial court's conclusions of law. *Allstate Ins. Co.*, 195 S.W.3d at 611.

The award of attorney fees is within the trial court's discretion and will not be overturned absent an abuse of discretion. *Wright ex rel. Wright v. Wright*, 337 S.W.3d 166, 176 (Tenn. 2011). In reviewing the award, we look at the evidence in the light most favorable to the trial court's decision. *Id.* Thus, we are required to uphold the trial court's ruling "as long as reasonable minds could disagree about its correctness," and "we are not permitted to substitute our judgment for that of the trial court." *Caldwell v. Hill*, 250 S.W.3d 865, 869 (Tenn. Ct. App. 2007).

ANALYSIS

(1)

The Pantry argues that the trial court erred in interpreting the lease agreement to require it to pay J-Star's Tennessee excise tax.

The Tennessee excise tax, codified at Tenn. Code Ann. §§ 67-4-2001–2022, is a tax "on the privilege of doing business in Tennessee in the corporate form." *First Am. Nat'l Bank of Knoxville v. Olsen*, 751 S.W.2d 417, 421 (Tenn. 1987); *see* Tenn. Code Ann. § 67-4-

2005. While the amount of the tax is determined by a percentage of an entity's net earnings from business done in Tennessee, Tenn. Code Ann. §§ 67-4-2006–2007, the excise tax is not an income tax, nor is it a property tax. *First Am.*, 751 S.W.2d at 421-22. For purposes of the excise tax, "[d]oing business in Tennessee" is defined as "any activity purposefully engaged in within Tennessee, by a person with the object of gain, benefit, or advantage . . . ." Tenn. Code Ann. § 67-4-2004(14)(A). Entering into a commercial lease falls within the definition. *See* Tenn. Dep't of Revenue Ruling 90-10. In the present case, the amount of J-Star's excise tax was based upon the rental income (minus certain deductions) from its lease to The Pantry.

A written lease agreement must be interpreted according to customary rules of contract construction. *Allstate Ins. Co.*, 195 S.W.3d at 611. If a contract is found to be unambiguous, then it is the court's duty to determine the intention of the parties as expressed in the language of the contract. *Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc.*, 78 S.W.3d 885, 890 (Tenn. 2002); *Nat'l Garage Co. v. George H. McFadden & Bro., Inc.*, 542 S.W.2d 371, 373 (Tenn. Ct. App.1975). In this case, neither party asserts that the lease is ambiguous.

We now set out the most pertinent lease provisions:

### Subsection 4(d)

Net Lease. Tenant acknowledges and agrees that it is intended that this Lease will be, except as otherwise expressly stated herein, a completely "net lease" to Landlord, and that Landlord is not responsible for any costs, charges, expenses, and outlays of any nature whatsoever arising from or relating to the Premises, whether arising or accruing prior to or during the Term of this Lease, including, without limitation, the Improvements, or the use and occupancy thereof, or the contents thereof or the business carried on therein, except as may be otherwise expressly stated herein. Tenant shall pay all charges, impositions, costs, and expenses of every nature and kind relating to the Premises arising or accruing prior to or during the Term of this Lease, except as herein expressly provided to the contrary. . . .

### Section 10 [Taxes]: subsections (a) and (b)

a) Tenant's Required Payments. [Sentence #1:] Tenant shall pay before delinquency and as additional rent, all taxes, assessments, license fees, costs incurred pursuant to covenants and restrictions affecting the Premises, and other charges (collectively referred to as "Taxes") levied or assessed against all merchandise, personal property, real property, buildings and improvements,

-3-

and any other obligations which are or may become a lien or levied against the Premises. . . . [Sentence #3:] If, at any time during the Term, the state in which the Premises are located or any political subdivision of the state . . . levies or assesses against Landlord a tax, fee or excise on (i) rents, including, if applicable, property taxes, insurance, maintenance, and other costs incurred by Tenant by which Landlord may benefit; (ii) on the square footage of the Premises; (iii) on the act of entering into this Lease; or (iv) on the occupancy of Tenant, or levies or assess[es] against Landlord any other tax, fee, or excise, however described, including, without limitation, a so-called value added tax, as a direct substitution in whole or in part for, or in addition to, any real property taxes, Tenant shall reimburse to Landlord or directly pay before delinquency that tax, fee, or excise. It is the intention of Tenant and Landlord that all new and increased assessments, taxes, fees, levies, and charges, and all similar assessments, taxes, fees, levies, and charges be included within the definition of Taxes for the purpose of this Lease. . . .

b) <u>Payments Not Required by Tenant</u>. Tenant shall not be required to pay any municipal, county, state, or federal income or franchise taxes of Landlord, or any inheritance or transfer taxes of Landlord or annual reporting or other fees in connection with maintaining Landlord's organizational existence under the laws of the State of its formation or creation.

Do these provisions require The Pantry, as tenant, to pay Tennessee excise taxes assessed against J-Star? For the reasons discussed below, we conclude that they do. We begin with section 4(d), which states that the parties intend that this is a "completely 'net lease'" and that J-Star, the landlord, "is not responsible for any costs, charges, expenses, and outlays of any nature whatsoever *arising from or relating to the Premises*." (Emphasis added). According to *Black's Law Dictionary*, a net lease is a lease "in which the lessee pays rent plus property expenses (such as taxes and insurance)." BLACK'S LAW DICTIONARY (9th ed. 2009). In this particular lease, a "completely 'net lease,'" The Pantry, as tenant, is to pay "all charges, *impositions, costs, and expenses of every nature and kind relating to the Premises* arising or accruing prior to or during the Term of this Lease, except as herein expressly provided to the contrary." (Emphasis added). The phrases "arising from . . . the Premises" and "relating to the Premises" encompass a broad range of expenses. With respect to J-Star's excise tax, the taxed earnings originated from J-Star's business activity of entering into a commercial lease. Such a tax arises from and/or is related to the rented premises, and thus falls within the parameters of the net lease provisions.

The lease provisions most directly applicable here are those in section 10 regarding taxes. Sentence #1 of section 10(a) requires The Pantry to pay "*all taxes*, assessments,

license fees, costs incurred pursuant to covenants and restrictions affecting the Premises, and other charges (collectively referred to as "Taxes") . . . and any other obligations which are or may become a lien or levied against the Premises." (Emphasis added). The Pantry emphasizes the phrase "affecting the Premises," but we construe this phrase as modifying only what immediately precedes it–"costs incurred pursuant to covenants and restrictions"–not all of the listed charges. The excise tax also falls within the list of taxes enumerated in Sentence #3, in particular the final phrase: "any other tax, fee, or excise, however described" that is levied in addition to real property taxes.[1] Given these broad provisions, we must conclude that The Pantry is liable under section 10(a) of the lease for J-Star's excise taxes.

We must, however, consider the effect of section 10(b), which excludes certain payments that might otherwise fall within section 10(a). Under section 10(b), The Pantry is not required to pay J-Star's income taxes or franchise taxes, inheritance taxes or transfer taxes, or "annual reporting or other fees in connection with maintaining Landlord's organizational existence under the laws of the State of its formation or creation." As stated above, the excise tax is not an income tax. Although the franchise and excise taxes are part of the same taxing scheme, they are separate taxes. *See* Tenn. Code Ann. §§ 67-4-2101–2121. The lease's express exclusion of the franchise tax from the required payments by the lessee implies the inclusion of the excise tax. *See D & E Constr. Co., Inc. v. Robert J. Denley Co., Inc.*, 38 S.W.3d 513, 519 (Tenn. 2001) (discussing the maxim *expressio unius est exclusio alterius*, or "the expression of one thing is the exclusion of another (of the same kind)").

The Pantry also argues that the excise tax falls within the category of "annual reporting or other fees in connection with maintaining Landlord's organizational existence." We cannot agree. First, a fee is distinct from a tax. *See Memphis Retail Liquor Dealers' Ass'n, Inc. v. City of Memphis*, 547 S.W.2d 244, 245-46 (Tenn. 1977). Second, excise taxes are imposed on the privilege of doing business in Tennessee; they are not charges required to maintain an entity's corporate existence, such as annual reporting or filing a charter. The fact, emphasized by The Pantry, that failure to pay the excise tax may result in revocation of a company's charter under Tenn. Code Ann. § 67-4-2016(c), does not make the excise tax a fee in connection with maintaining corporate existence. As J-Star points out, a company's obligation to pay excise taxes remains despite revocation of its charter or registration. *See* Tenn. Code Ann. § 67-4-2007(b).

For all of these reasons, we conclude that the lease between J-Star and The Pantry

---

[1]As J-Star points out, the excise tax is arguably a tax on "the act of entering into this Lease." Given the other provisions previously discussed, we need not rely on that part of the lease.

required The Pantry to pay J-Star's Tennessee excise taxes.

(2)

The other issues on appeal involve the award of attorney fees. The Pantry argues that the trial court erred in awarding J-Star $40,000 in attorney fees, and J-Star argues that the court incorrectly limited the amount of its attorney fees to $40,000.

In its order granting J-Star's motion for summary judgment, the trial court reserved the issue of attorney fees. Prior to the hearing on attorney fees and costs, J-Star submitted an affidavit from each of its two attorneys along with an invoice of legal services and costs; the total amount of attorney fees incurred was $85,078. In opposing J-Star's request for attorney fees, The Pantry submitted an attorney affidavit and invoice detailing the attorney fees it had incurred, which totaled $39,285. After a hearing on January 31, 2012, the trial court entered an order on April 3, 2012 in which it found that The Pantry was liable to J-Star for administrative costs and reasonable attorney fees incurred in enforcing its rights as well as for late charges and interest. The court went on to give the following explanation:

> In awarding attorneys' fees, the Court considers the relative amount at stake in this matter, the results obtained by J-Star and the other factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct. The Court finds that the amount of J-Star's attorneys' fees which will be shifted to The Pantry is limited to $40,000.00.

The Pantry's main argument with respect to attorney fees seems to be that it was not obligated under the lease to pay J-Star's Tennessee excise tax and, therefore, J-Star was not entitled to any attorney fees. As we have already rejected the premise of this argument, however, the argument must fail.

The Pantry also asserts that excise taxes are not included in the lease's definition of rent and, thus, there was no default entitling J-Star to attorney fees. Section 21 of the lease, the key provision applicable here, addresses default. Section 21(a) defines an "event of default" in three paragraphs, the first of which deals with a tenant's failure to pay rent when due. J-Star takes the position that The Pantry's obligation to pay J-Star's Tennessee excise tax constitutes additional rent. This position finds support in the fact that the lease's "net lease" provisions (discussed above) appear in section 4, which covers "Rental." We need not, however, rely on paragraph one because The Pantry's refusal to pay J-Star's excise taxes would fit under paragraph two, which provides that the following constitutes an "event of default":

Failure by Tenant to perform or comply with any provision of this Lease (other than as set forth above) if failure is not cured within thirty (30) days after receipt of notice from Landlord to Tenant describing such failure.

We conclude that The Pantry's failure to pay J-Star's excise taxes qualifies as an event of default under the lease.

Section 21(b) provides that, in the event of the tenant's default, the landlord shall have one or more of the described remedies. The following paragraph of subsection (b) governs here:

In all events, Tenant is liable for all damages of whatever kind or nature, direct or indirect but excluding consequential damages, suffered by Landlord as a result of the occurrence of an Event of Default. If Tenant fails to pay Landlord in a prompt manner for the damages suffered, Landlord may pursue a monetary recovery from Tenant. Included among these damages are . . . a reasonable allowance for Landlord's administrative costs attributable to Tenant's default, *and all reasonable attorneys' fees at customary hourly rates actually incurred by Landlord in enforcing any of Landlord's rights or remedies against Tenant.*[2]

Based upon these lease provisions and our previous determination that the lease requires The Pantry to pay J-Star's Tennessee excise taxes, we find no abuse of discretion in the trial court's decision to make an award to J-Star for attorney fees.

J-Star argues that it should have received an award for *all* of its attorney fees, which totaled more than $85,000. A trial court has broad discretion to determine what amount constitutes a reasonable attorney fee. *See Kahn v. Kahn*, 756 S.W.2d 685, 696 (Tenn. 1988); *Madden Phillips Constr., Inc. v. CGAT Dev. Corp.*, 315 S.W.3d 800, 827 (Tenn. Ct. App. 2009). In making a determination about the reasonableness of attorney fees, a trial court must consider the guidelines set out in *Connors v. Connors*, 594 S.W.2d 672, 676 (Tenn. 1980), and the similar factors stated in Rule 1.5 of the Rules of Professional Conduct. Tenn. Sup. Ct. R. 8, RPC 1.5(a); *Brunswick Acceptance Co., LLC v. MEJ, LLC*, 292 S.W.3d 638, 646 (Tenn. Ct. App. 2008).

J-Star asserts that the trial court failed to provide an adequate explanation for its decision, but has cited no Tennessee precedent stating that the trial court was required to

_____

[2]Section 40 of the lease, regarding indemnification, also entitles the landlord to attorney fees incurred in connection with a default by the tenant.

provide a detailed explanation of how it reached its award. Before it made its ruling, the trial court received affidavits and briefs from all of the attorneys and heard their arguments. The trial court stated in its order that it had considered the factors listed in Rule 1.5. The court also referenced specifically several factors it found especially pertinent– "the relative amount at stake in this matter, the results obtained by J-Star." Moreover, this court has previously noted that "a court [ruling on attorney fees] is able to rely upon its own knowledge of the case and also on its general knowledge of fees for legal services." *Wright v. Wright*, No. M2007-00378-COA-R3-CV, 2007 WL 4340871, at *5 (Tenn. Ct. App. Dec. 12, 2007). The court limited J-Star's attorney fees to $40,000 (the approximate amount incurred by The Pantry).

Under the circumstances of this case, we find no abuse of discretion in the trial court's decision on the amount of attorney fees.

Given the results of this appeal and the terms of the lease, we hereby award J-Star its reasonable attorney fees incurred in this appeal. *See Brunswick*, 292 S.W.3d at 646-47.

CONCLUSION

The judgment of the trial court is affirmed in all respects, and this matter is remanded to the trial court for a determination regarding reasonable attorney fees on appeal. Costs of appeal are assessed against The Pantry, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE