IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
July 11, 2023 Session

## COLLIER ENGINEERING COMPANY, INC. v. TIMOTHY W. MARTIN

**Appeal from the Chancery Court for Davidson County**
**No. 22-587-IV      Russell T. Perkins, Chancellor**

_____

### No. M2022-01641-COA-R3-CV
_____

An employer sought to enforce restrictive covenants against a former employee. In response, the former employee filed a counterclaim for retaliatory discharge, and the employer moved to compel arbitration on the counterclaim. The former employee opposed the motion, arguing that the arbitration agreement was either unenforceable or inapplicable. The trial court agreed that the arbitration agreement did not apply to the counterclaim. So it denied the motion to compel. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which FRANK G. CLEMENT JR., P.J., M.S., and JEFFREY USMAN, J., joined.

William N. Helou, Nashville, Tennessee, for the appellant, Collier Engineering Company, Inc.

J. Michael Clemons and John Ray Clemmons, Nashville, Tennessee, for the appellee, Timothy W. Martin.

## OPINION

### I.

Fourteen years after Timothy Martin was hired by Collier Engineering Company, Inc., he signed an Employee Confidentiality, Non-Compete, and Non-Solicitation Agreement at his employer's request. Among other things, the Agreement prohibited Mr. Martin from disclosing confidential information, as defined in the Agreement, or making disparaging comments about the company or its personnel.

Six years later, Collier Engineering filed a breach of contract action against Mr. Martin in Davidson County Chancery Court. According to Collier Engineering, it discovered in early 2022 that Mr. Martin was overbilling clients. So the company offered him the option to resign or be terminated. He chose to resign. After his resignation, Mr. Martin made disparaging statements about his former employer to Collier Engineering's employees and clients. He also disclosed confidential information in violation of the Agreement. Collier Engineering sought temporary and permanent injunctive relief as well as compensatory damages and attorney's fees. Despite Mr. Martin's objections,[1] the court issued a limited temporary injunction. Mr. Martin then filed an answer and counterclaim.

In his counterclaim, Mr. Martin alleged that he was terminated in retaliation for his refusal to participate in illegal activity. According to his pleading, for over ten years, Mr. Martin was forced to obtain illegal opiates for the president of Collier Engineering. Shortly after he told the president that he would no longer participate in that illegal activity, Mr. Martin's employment was terminated. Mr. Martin sought compensatory and punitive damages for statutory retaliatory discharge in violation of the Tennessee Public Protection Act. *See* Tenn. Code Ann. § 50-1-304 (2022).

Collier Engineering moved to dismiss the counterclaim based on the arbitration provision in the Agreement. It argued that the parties had agreed to submit all disputes related to the Agreement, other than claims for equitable relief, to binding arbitration. Mr. Martin responded that the arbitration provision was unclear and unconscionable. And, even if it was enforceable, it was inapplicable to his counterclaim.

The trial court treated Collier Engineering's motion to dismiss as a motion to compel arbitration under the Tennessee Uniform Arbitration Act ("TUAA"). *See* Tenn. Code Ann. § 29-5-303(a) (2012) (repealed 2023).[2] Rejecting Mr. Martin's arguments to the contrary, the court determined that a valid arbitration agreement existed between the parties. Still, the parties only agreed to arbitrate disputes "arising out of or related to" the Agreement. Because the retaliatory discharge counterclaim was not within the scope of the arbitration provision, the court denied the motion.

---

[1] In response to Collier Engineering's request for a temporary injunction, Mr. Martin argued that the underlying contract was unenforceable because it lacked adequate consideration and was indefinite or unconscionable.

[2] Effective July 1, 2023, the General Assembly substantially revised the TUAA. *See* 2023-2 Tenn. Code Ann. Adv. Legis. Serv. 305 (LexisNexis). Because this case was filed before the effective date of the revisions, we cite to the former version.

## II.

On appeal, Collier Engineering argues that the trial court erred in ruling that the arbitration provision did not apply to the retaliatory discharge counterclaim. For his part, Mr. Martin contends that the court's reasoning was sound. But, if not, Mr. Martin urges this Court to affirm the trial court's judgment because the arbitration provision lacked adequate consideration.

Neither party challenges the trial court's decision to treat Collier Engineering's motion to dismiss as a motion to compel arbitration. Our review of the denial of a motion to compel arbitration is "de novo, with no presumption of correctness." *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 723 (Tenn. 2024). Like the trial court, "we apply ordinary principles of contract law" to decide whether an enforceable arbitration agreement exists. *Id.*; *Taylor v. Butler*, 142 S.W.3d 277, 284 (Tenn. 2004).

Under the TUAA—which both parties agree applies—arbitration agreements are valid and enforceable except "upon such grounds as exist at law or in equity for the revocation of any contract." Tenn. Code Ann. § 29-5-302(a) (2012) (repealed 2023). Before enforcing an arbitration agreement, the court must resolve any contract formation issues that have been raised. *Williams*, 685 S.W.3d at 284; Tenn. Code Ann. § 29-5-303(a) (2012) (repealed 2023).

Mr. Martin contends that the arbitration agreement lacked sufficient consideration. *See Est. of Brown*, 402 S.W.3d 193, 200 (Tenn. 2013) ("Adequate consideration is a necessary ingredient for every contract."). But he did not make this argument in the trial court in response to Collier Engineering's motion to compel arbitration. So this issue has been waived. *See Martin v. Rolling Hills Hosp., LLC*, 600 S.W.3d 322, 336 (Tenn. 2020); *Wilson v. Esch*, 166 S.W.3d 729, 730 (Tenn. Ct. App. 2004) ("Issues not raised in the trial court may not be raised for the first time on appeal."). Mr. Martin raises no other contract formation issues on appeal.

Tennessee law favors enforcement of arbitration agreements. *Trigg v. Little Six Corp.*, 457 S.W.3d 906, 912 (Tenn. Ct. App. 2014). Even so, "parties cannot be forced to arbitrate claims that they did not agree to arbitrate." *Frizzell Constr. Co. v. Gatlinburg, L.L.C.*, 9 S.W.3d 79, 84 (Tenn. 1999). We apply the ordinary rules of contract interpretation to determine the scope of the parties' arbitration agreement. *Id.* at 85; *Taylor*, 142 S.W.3d at 284. Contract interpretation is a question of law which we review de novo with no presumption of correctness. *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006).

The court's task in any contract dispute "is to ascertain the intention of the parties based upon the usual, natural, and ordinary meaning of the contractual language." *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). The parties' words are "the lodestar of

contract interpretation." *Individual Healthcare Specialists, Inc. v. BlueCross BlueShield of Tenn., Inc.*, 566 S.W.3d 671, 694 (Tenn. 2019). If the language used is unambiguous, we enforce the contract as written. *Dick Broad. Co. v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 659 (Tenn. 2013); *Allstate Ins. Co.*, 195 S.W.3d at 611.

Here, the parties agreed that "[a]ny dispute, controversy or claim arising out of or related to this Agreement or any breach of this agreement shall be submitted to and decided by binding arbitration."[3] The current dispute concerns the circumstances surrounding the termination of Mr. Martin's employment. Neither party asserts that Mr. Martin was terminated for violating the restrictive covenants in the Agreement. Yet Collier Engineering argues that the retaliatory discharge counterclaim is still "related to" the Agreement. So we must decide whether the counterclaim is "[c]onnected in some way" or "ha[s] [a] relationship to or with" the Agreement. *See Related*, BLACK'S LAW DICTIONARY (12th ed. 2024).

Characterizing the Agreement as an employment agreement, Collier Engineering insists that Mr. Martin's retaliatory discharge counterclaim is obviously "connected in some way" to his employment. *See id.* But this argument is based on a faulty premise. The Agreement is identified as an "Employee Confidentiality, Non-Compete, and Non-Solicitation Agreement." Section 4 provides that the Agreement "is not a contract of employment and shall not be construed as a commitment by either of the Parties to continue an employment relationship for any certain period of time." Mr. Martin was an at-will employee. With some notable exceptions, his employment could "be terminated . . . at any time, for any reason, or for no reason at all." *Williams v. City of Burns*, 465 S.W.3d 96, 108 (Tenn. 2015). Although the stated consideration for the Agreement was Mr. Martin's continued employment, the Agreement did not "modify the 'at-will' status of [his] employment relationship" or purport to govern the terms of his employment in general.

According to Collier Engineering, the Agreement expressly governs the terms of Mr. Martin's employment because the Agreement "supersedes all prior and contemporaneous understandings, agreements, representations and warranties, both written and oral, with respect to such Employment, . . ." But this is only part of a sentence from section 10 of the Agreement, which provides:

> Entire Agreement. Unless specifically provided herein, this Agreement contains all the understandings and representations between the Employee and the Employer pertaining to the [subject matter hereof [DESCRIPTION OF SUBJECT MATTER COVERED]] and supersedes all prior and contemporaneous understandings, agreements, representations and

---

[3] Another provision in the Agreement permitted Collier Engineering to seek equitable relief in "any court of competent jurisdiction" if Mr. Martin violated the Agreement.

4

warranties, both written and oral, with respect to such Employment, Confidentiality, Non-Competition, Non-Solicitation, Noon-Disparaging [sic] and damages and remedies agreement. In the event of any inconsistency between the statements in the body of this Agreement and any other agreements between the Employer and the Employee, the statements in the body of this Agreement shall control. Nothing herein modifies, supersedes, voids or otherwise alters the following pre-existing contractual obligation: Collier Engineering Co., Inc. Employment Agreement and/or Collier Engineering Co., Inc. Non-Compete Agreement.

We must consider the entire text, "construing [the] contract[] as a whole." *Perkins v. Metro. Gov't of Nashville*, 380 S.W.3d 73, 85 (Tenn. 2012). Properly construed, section 10 is an integration clause, indicating that the Agreement "represents the parties' complete and final agreement and supersedes all informal understandings and oral agreements relating to the subject matter of the contract." *Integration Clause*, BLACK'S LAW DICTIONARY (12th ed. 2024); *see also Individual Healthcare Specialists*, 566 S.W.3d at 697 n.27 (discussing integration or merger clauses). And the subject matter of the Agreement was employee confidentiality, non-competition, non-solicitation, and non-disparagement.

The comma placed after the word "Employment" did not change the essential nature of the Agreement. The Agreement makes clear that the terms of Mr. Martin's employment were governed by either a separate employment contract or the common law doctrine of at-will employment. Section 10 specifies that "[n]othing herein modifies, supersedes, voids or otherwise alters" the terms of the "Collier Engineering Co., Inc. Employment Agreement." Similarly, section 4 provides that "[n]othing in this Agreement shall be construed to in any way terminate, supersede, undermine or otherwise modify the 'at-will' status of the employment relationship between the Employer and the Employee, pursuant to which either the Employer or the Employee may terminate the employment relationship at any time, with or without cause, with or without notice."

In a final effort to draw some connection between the Agreement and Mr. Martin's counterclaim, Collier Engineering argues that Mr. Martin's allegations are based on confidential information and disparages the company and its president. Even so, Mr. Martin's retaliatory discharge counterclaim does not depend on the existence of the Agreement. *See Frounfelker v. Identity Grp., Inc.*, No. M2001-02542-COA-R3-CV, 2002 WL 1189299, at *3 (Tenn. Ct. App. June 5, 2002) (holding that arbitration provision did not reach the parties' dispute). If, as Collier Engineering claims, Mr. Martin's allegations constitute another violation of the restrictions in the Agreement, that is a separate dispute. Here, we are concerned only with whether the retaliatory discharge counterclaim bears some relationship to the subject matter of the Agreement. We conclude that it does not.

## III.

The arbitration provision does not apply to the retaliatory discharge counterclaim because the counterclaim does not "arise out of or relate to" the Employee Confidentiality, Non-Compete, and Non-Solicitation Agreement. So we affirm. This case is remanded for further proceedings consistent with this opinion.

s/ W. Neal McBrayer
W. NEAL MCBRAYER, JUDGE

6