IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs August 1, 2024

## ANITA BUCHANAN, NEXT OF KIN OF LUCY ANITA LEACH, DECEASED, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF LUCY ANITA LEACH v. FRANKLIN OPERATING GROUP, LLC ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 20CV-405        Joseph A. Woodruff, Judge**

_____

**No. M2022-01017-COA-R9-CV**

_____

Following a woman's death in a nursing home facility, the woman's daughter sued the facility and its affiliated entities for negligence and wrongful death. The defendants moved to stay the proceedings and compel arbitration pursuant to an agreement that the woman's daughter signed when the mother was admitted to the facility. The trial court granted the defendants' motion but also granted the plaintiff's request for an interlocutory appeal. This Court agreed with the trial court and granted the interlocutory appeal. Because the woman's daughter, the plaintiff, did not have the requisite authority to sign the particular arbitration agreement at issue, we reverse and remand.

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court Reversed; Case Remanded**

KRISTI M. DAVIS, J., delivered the opinion of the Court, in which W. NEAL MCBRAYER and CARMA DENNIS MCGEE, JJ., joined.

Cameron C. Jehl, Carey L. Acerra, Deena K. Arnold, and Eric H. Espey, Memphis, Tennessee; and Deborah Truby Riordan, Little Rock, Arkansas, for the appellant, Anita Buchanan.

Adam F. Rust, Knoxville, Tennessee; and Kimberly B. Sterling, Memphis, Tennessee, for the appellees, Franklin Operating Group, LLC, MFI Healthcare TN III LLC, MFI Healthcare GT, LLC, MFI Healthcare MD LLC, Anshel Niederman, and Abigail Dawn Gehrke.

# OPINION

## BACKGROUND

On September 30, 2015, Lucy Leach ("Decedent") executed a Durable Power of Attorney (the "POA") designating her daughter, Anita Buchanan, her attorney-in-fact. The POA provides, as relevant:

> (CAUTION): THE POWERS GRANTED BY THIS DOCUMENT ARE BROAD AND SWEEPING. BEFORE SIGNING THIS DOCUMENT, CONSIDER ITS CONSEQUENCES. YOU ("GRANTOR") ARE PROVIDING ANOTHER PERSON ("AGENT") WITH THE POWER TO HANDLE BUSINESS AND LEGAL MATTERS ON YOUR BEHALF, INCLUDING THE POWER TO SELL, MORTGAGE OR DISPOSE OF YOUR PROPERTY. ANY SUCH ACTION UNDERTAKEN BY YOUR AGENT, WITHIN THE SCOPE OF THIS POWER OF ATTORNEY DOCUMENT, IS LEGALLY BINDING UPON YOU. IF YOU HAVE ANY QUESTIONS ABOUT THESE POWERS, OBTAIN COMPETENT LEGAL ADVICE. **THIS DOCUMENT DOES NOT AUTHORIZE ANYONE TO MAKE MEDICAL AND OTHER HEALTH-CARE DECISIONS FOR YOU.** YOU MAY REVOKE THIS POWER OF ATTORNEY IF YOU LATER WISH TO DO SO.

(Emphasis added).

The POA goes on to provide a list of broad powers afforded to Ms. Buchanan as her mother's attorney-in-fact, including the power "[t]o enter into binding contracts on [Decedent's] behalf and to sign, endorse and execute any written agreement and document necessary to enter into any such contract and/or agreement . . ."

On or about April 13, 2018, Decedent was admitted into a nursing home facility called Grace Healthcare of Franklin ("Grace Healthcare"). In addition to Decedent's other paperwork, Ms. Buchanan executed, on Decedent's behalf, a document titled "Mediation and Arbitration Agreement" (the "arbitration agreement").[1] The arbitration agreement provides that by signing it, the resident waives "the right to a jury trial for any dispute[,]" and that any decision by an arbitrator "binds both parties, is final and nonappealable." The arbitration agreement further provides that if the agreement is not signed, "the resident will still be allowed to receive services at the facility." As pertinent to this appeal, the arbitration agreement also states:

---

[1] The arbitration agreement is dated April 19, 2018, although the parties appear to agree that Decedent became a resident of Grace Healthcare on or about April 13, 2018.

1. <u>Those Signing this Contract</u>. This executed Agreement becomes a part of the Resident's underlying Admission Agreement(s). The term "Resident" shall refer collectively to those signing with or for the Resident and are those who [*sic*][2] makes decisions for the Resident and even if they are not the Power of Attorney or Guardian/Conservator, will be consi[*sic*] health care surrogate/proxy and/or Legal Representative. **The parties agree that the signing of this Agreement, both by conjunction with the corresponding admission and receipt of services, is a health care decision.** The Resident will be co[*sic*] be a third party beneficiary of this Agreement and is intended to benefit directly from the execution of this Agreement in [*sic*] with the corresponding admission(s) and receipt of services. The term "Facility" includes any owner, manager, person c[*sic*] acting on behalf of the nursing home.

(Emphasis added).

Decedent resided at Grace Healthcare until her death on or about February 26, 2020.[3] On August 31, 2020, Ms. Buchanan filed suit against Franklin Operating Group, LLC, d/b/a Grace Healthcare; MFI Healthcare TN III LLC; MFI Healthcare GT, LLC; MFI Healthcare MD LLC; Anshel Niederman; and Abigail Gehrke, in her capacity as Grace Healthcare's administrator (together, "Defendants"), in the Circuit Court for Williamson County (the "trial court"). Proceeding as Decedent's next of kin and on behalf of Decedent's wrongful death beneficiaries, Ms. Buchanan alleged claims for negligence and wrongful death and asked for punitive and compensatory damages in an amount to be determined by a jury. Ms. Buchanan alleged that sub-standard care provided by Grace Healthcare led to Decedent's poor hygiene and pressure sores, which ultimately caused Decedent's death.

On January 28, 2021, Defendants filed a motion to compel arbitration and stay the proceedings or, in the alternative, to dismiss. Defendants argued that Ms. Buchanan's causes of action stem from services provided to Decedent and that the arbitration agreement thus controlled those causes of action. Defendants further argued that the arbitration agreement "should be enforced and that said contract effectively deprives [the trial court] of jurisdiction over the merits of the Plaintiff's various claims for damages." Ms. Buchanan filed a response on March 21, 2022, arguing that she did not have authority to execute the arbitration agreement because she had no authority to make health care decisions on Decedent's behalf. Ms. Buchanan argued that the POA specifically excludes

---

[2] Portions of the arbitration agreement provided in the record to this Court are cut off on the right-hand side. This does not affect our ability to read the arbitration agreement overall, however.

[3] The copy of Decedent's death certificate furnished in the record is difficult to read. As best we can discern, Decedent passed away on February 26, 2020, and, ultimately, the date of death is not dispositive to our analysis.

the power to make medical and health care decisions. In supplemental briefing filed by Defendants on April 11, 2022, Defendants urged that Ms. Buchanan's execution of the arbitration agreement was not only a health care decision, but a legal decision within the health care context. Defendants relied on our Supreme Court's decision in *Owens v. National Health Corp.*, 263 S.W.3d 876 (Tenn. 2007), to support their argument that signing an arbitration agreement with a nursing home can be considered both a legal and health care decision. To the extent that execution of the arbitration agreement was a legal decision, Defendants posited that the POA at issue granted Ms. Buchanan the authority to validly sign said agreement.

While there is no transcript in the record, the trial court's order of April 28, 2022 provides that it held a hearing on the motion to compel arbitration on April 21, 2022. The trial court granted Defendants' motion and stayed the proceedings. The trial court reasoned as follows:

> Ms. Buchanan's central argument is that the Agreement is a "health care decision" due to the following sentence being present in the Agreement: "The parties agree that the signing of this Agreement, both by and in conjunction with the corresponding admission and receipt of services, is a health care decision." Defendants concede that Ms. Buchanan held a General POA and not a health care power of attorney ("Healthcare POA"), but they also assert that the General POA was sufficient to authorize Ms. Buchanan to enter into the Agreement.

> "A written agreement to submit any existing controversy to arbitration or a provision in a written contract to submit to arbitration any controversy thereafter arising between the parties is valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the revocation of any contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 318 (Tenn. 1996) (quoting Tenn. Code Ann. § 29-5-302(a)). "[I]f the court finds a valid written agreement to arbitrate, whether to order the parties into arbitration is not a matter of discretion for the court, but is statutorily required." *Woffard v. M.J. Edwards & Sons Funeral Home Inc*[.], 490 S.W.3d 800, 809 (Tenn. Ct. App. 2015) (quoting *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 868 (Tenn. Ct. App. 2002)). A Healthcare POA allows the holder of the power to enter into nursing home contracts, including arbitration provisions. *Owens v. Nat. Health Corp.*, 263 S.W.3d 876, 885 (Tenn. Ct. App. 2007). This includes the ability for an attorney-in-fact pursuant to a power of attorney to enter into both health care decisions and legal decisions. *Id.*

> Contrary to the claims of both parties, the Agreement is not exclusively a "health care decision." The obvious and predominant nature of the Agreement is a legal decision. For example, the Agreement states that

"any and all disputes between the Resident and the Facility shall be first submitted to mediation and if mediation is unsuccessful, then to binding arbitration where the amount in controversy exceeds the limits of the Small Claims Court in the county where the facility is located." The Agreement further states the process for "initiat[ing] arbitration" and the process for the parties to "work together in good faith to choose a neutral, experienced and disinterested arbitrator." The one sentence describing the Agreement as a "health care decision" does not change the overall purpose of the Agreement; to-wit, making a legally binding contractual agreement to settle disputes via arbitration. Without this one sentence, there would be no question that the Agreement is purely a legal decision.

The trial court further reasoned that "the [arbitration a]greement is fundamentally a legal decision in nature, and the parties agreed it was also a health care decision 'by and in conjunction with the corresponding admission and receipt of services.'"

As a second basis for its ruling, the trial court found that Ms. Buchanan was a health care surrogate for Decedent pursuant to the Health Care Decisions Act, Tenn. Code Ann. section 68-11-1801 *et seq.*, and that "even if Ms. Buchanan did not have the authority to enter into the arbitration agreement under the General POA, she did have the apparent authority to enter into the arbitration agreement under Tenn. Code Ann. § 68-11-1806." Finally, the trial court noted that Ms. Buchanan had permission to appeal its ruling to this Court as an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9.

Ms. Buchanan filed a motion to alter or amend on May 27, 2022, requesting, *inter alia*, that the trial court certify questions for review pursuant to Rule 9, which it did in an order entered on July 18, 2022. Following Ms. Buchanan's notice of appeal to this Court, we entered an order on August 19, 2022, granting Ms. Buchanan's request for an interlocutory appeal.

## ISSUES

Ms. Buchanan raises two issues on appeal,[4] which we take verbatim from her

---

[4] The trial court initially certified a third issue for review, which we take verbatim from the trial court's July 18, 2022 order:

Whether wrongful death claims asserted in the Complaint are bound to arbitration in light of the reasoning of *James Williams v. Smyrna Residential, LLC et al.*, No. M2021-00927-COA-R3-CV, 2022 WL 1052429 (Tenn. Ct. App. April 8, 2022) and *Beard v. Branson*, 528 S.W.3d 487 (Tenn. 2017).

In their briefs to this Court, however, neither party addresses this issue. Thus, we do not address it.

appellate brief:

> I.      Whether [Ms.] Buchanan had authority pursuant to the General Power of
> Attorney to agree to arbitration at the time of [Decedent's] admission to Defendants'
> facility.
>
> II.     Whether [Ms.] Buchanan had authority to agree to arbitration pursuant to the
> Tennessee Health Care Decisions Act at the time of [Decedent's] admission to
> Defendants' facility.

## STANDARD OF REVIEW

This interlocutory appeal stems from the trial court's grant of Defendants' motion to compel arbitration. Accordingly, our review is "de novo, with no presumption of correctness." *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718, 723 (Tenn. 2023). We treat arbitration agreements "in the same manner as other contracts." *Id.* (quoting *Harvey ex rel. Gladden v. Cumberland Tr. & Inv. Co.*, 532 S.W.3d 243, 266 (Tenn. 2017)). This appeal also requires us to interpret the terms of a power of attorney, and "[b]ecause the interpretation of a power of attorney is a question of law, our review of that issue likewise is de novo." *Id.*

## DISCUSSION

### I.      The power of attorney

Both in the trial court and in their briefs to this Court, the parties argue that this case turns primarily on application of *Owens v. National Health Corp.*, 263 S.W.3d 876 (Tenn. 2007). Consequently, we start by reviewing that case.

In *Owens*, Mary King executed a durable power of attorney naming two people as her attorneys-in-fact. *Id.* at 879. The power of attorney in *Owens*, however, was a durable power of attorney specifically for health care decisions which granted the attorneys-in-fact "the power and authority to execute on my behalf any waiver, release or other document which may be necessary in order to implement the health care decisions that this instrument authorizes[.]" *Id.* at 880. Shortly after executing the power of attorney, Ms. King was admitted to a nursing home; one of the attorneys-in-fact, Gwen Daniel, executed the necessary paperwork on Ms. King's behalf. *Id.* The paperwork included an arbitration agreement and jury trial waiver. *Id.* In 2005, Ms. King's conservator filed suit against the nursing home and affiliated entities alleging that Ms. King suffered injuries as a result of the nursing home's negligence. *Id.* at 881.

The defendants moved to compel arbitration and stay the proceedings based on the agreement signed by Ms. Daniel upon Ms. King's admission to the nursing home. *Id.* The trial court denied the motion, finding that the power of attorney was not broad enough to

authorize Ms. Daniel to make legal decisions on Ms. King's behalf and that the arbitration agreement was thus non-binding. *Id.* at 882. This Court reversed, "concluding that the power of attorney authorized [Ms.] Daniel to make health care decisions on behalf of [Ms.] King and that the decision to admit [Ms.] King to a nursing home is a health care decision." *Id*. The plaintiff appealed to our Supreme Court. *Id.*

On appeal, the plaintiff argued "that the decision to sign an arbitration agreement and to waive a jury trial is a *legal* decision, not a *health care* decision." *Id.* at 883. Our Supreme Court concluded, however, that "the decision to admit [Ms.] King to the nursing home clearly constitutes a 'health care decision.'" *Id.* at 884. The Court further reasoned that "an attorney-in-fact acting pursuant to a durable power of attorney for health care may sign a nursing-home contract that contains an arbitration provision because this action is necessary to 'consent . . . to health care.'" *Id.* (citing Tenn. Code Ann. § 34-6-201(3)). Relevant to the present appeal, the Supreme Court further opined:

> The plaintiff's argument on this issue is faulty in at least one other respect. Her purported distinction between making a legal decision and a health care decision fails to appreciate that signing a contract for health care services, even one without an arbitration provision, is itself a "legal decision." The implication of the plaintiff's argument is that the attorney-in-fact may make one "legal decision," contracting for health care services for the principal, but not another, agreeing in the contract to binding arbitration. That result would be untenable. Each provision of a contract signed by an attorney-in-fact could be subject to question as to whether the provision constitutes an authorized "health care decision" or an unauthorized "legal decision." Holding that an attorney-in-fact can make some "legal decisions" but not others would introduce an element of uncertainty into health care contracts signed by attorneys-in-fact that likely would have negative effects on their principals. Such a holding could make it more difficult to obtain health care services for the principal. And in some cases, an attorney-in-fact's apparent lack of authority to sign an arbitration agreement on behalf of the principal presumably could result in the principal being unable to obtain needed health care services.

*Id.* at 884–85.

Based on the foregoing, the plaintiff in the present case, Ms. Buchanan, argues that "the signing of an arbitration agreement in conjunction with admission to a healthcare facility [is] considered a healthcare decision in Tennessee[.]" And because "Ms. Buchanan did not have the requisite healthcare decision-making authority" under the POA, the arbitration agreement was not validly executed. Defendants, on the other hand, argue that under *Owens*, "signing an arbitration agreement in a nursing home setting is primarily a legal decision which can also be a healthcare decision." According to Defendants, the POA

at issue is broad enough that Ms. Buchanan was duly authorized to sign the arbitration agreement.

Owens is certainly helpful background. Owens is also important to discuss because the trial court's order and much of the parties' arguments on appeal center around that case. Nonetheless, our Supreme Court more recently addressed arbitration agreements in nursing home contracts under circumstances that are more analogous to the present case.

In *Williams v. Smyrna Residential, LLC*, 685 S.W.3d 718 (Tenn. 2023), a man executed a general durable power of attorney in favor of his daughter, Ms. Sams, in 2007. The power of attorney in *Williams* did not mention health care or medical decision-making. 685 S.W.3d at 720. It did contain, however, a provision stating that Ms. Sams could "act for me in all claims and litigation matters." *Id.* at 721. The man was admitted to a nursing home in 2020 and died in that facility shortly thereafter. *Id.* at 722. Upon his admission, Ms. Sams filled out an admission agreement containing an alternative dispute resolution provision. *Id.* at 721. The provision stated "that signing the agreement is not 'a precondition to the furnishing of services under the admission agreement.'" *Id.* at 722 (alterations in original omitted).

Later, when the man's other child sued the nursing home and its affiliated entities as next of kin and on behalf of the man's wrongful death beneficiaries, the defendants moved to compel arbitration. *Id.* The plaintiff opposed the motion, arguing "that the power of attorney did not give [Ms.] Sams authority to enter the arbitration agreement on [the man's] behalf because it did not specify that [Ms.] Sams had authority to make health care decisions" for her father. *Id.* The trial court agreed with the plaintiff, finding that "entering the agreement constituted a 'health care decision' and the power of attorney did not grant [Ms.] Sams authority to make health care decisions." *Id.* at 722. This Court affirmed, holding that "the decision to sign the optional arbitration agreement was 'part and parcel of a healthcare decision.'" *Id.*

Our Supreme Court reversed, and in doing so differentiated *Owens* from cases such as the case at bar, in which signing an arbitration agreement is not necessary for admission to a nursing home. Like the parties in this case, the parties in *Williams* cited to *Owens* to support their respective positions; nonetheless, the High Court found that *Owens* was only "superficially similar" to the facts of *Williams*. *Id.* at 726. Rather, the *Williams* Court had to "look beyond *Owens* and consider as a matter of first impression whether an attorney-in-fact with general authority to act for a principal in 'all claims and litigation matters,' but no specific authority to make health care decisions, may enter an arbitration agreement in the course of admitting a principal to a health care facility when that agreement is not a condition of admission." *Id.* The *Williams* Court found that because the arbitration agreement at issue was not a condition of admission into the nursing home, signing the agreement was not a "health care decision." *Id.* at 727. Accordingly, the

dispositive fact distinguishing *Williams* from *Owens* was that the arbitration agreement in *Williams* was optional and had no effect on obtaining health care.

As with *Williams*, the facts of the present case are only "superficially similar" to the facts of *Owens*. *Id.* at 726. Thus, we are not persuaded by either party's argument to the extent it turns primarily on *Owens*. This case is more analogous to *Williams*. Like the attorney-in-fact in *Williams*, Ms. Buchanan executed a general durable POA as opposed to a health care specific POA. The POA at issue here explicitly excludes Ms. Buchanan from making health care decisions on Decedent's behalf in large, bold, capital letters at the very top of the document. It provides that "[t]his document does not authorize anyone to make medical and other health-care decisions" for Decedent. Further, the arbitration agreement states that if it is not signed, "the resident will still be allowed to receive services at the facility." Consequently, this case is also analogous to *Williams* in the sense that here, executing the arbitration agreement was unnecessary for Decedent's admission to Grace Healthcare.

Accordingly, this case is, at first blush, almost perfectly analogous to and easily decided under *Williams*. That said, we have difficultly concluding that this case is on all fours with *Williams* because of one important fact–the arbitration agreement at issue here explicitly provides that "[t]he parties agree that the signing of this Agreement, both by conjunction with the corresponding admission and receipt of services, is a health care decision." Given that Decedent's POA specifically excludes Ms. Buchanan from making "medical and health-care decisions" on Decedent's behalf, and that the arbitration agreement contains the foregoing provision, we must determine whether, notwithstanding this case's similarities to *Williams*, execution of the arbitration agreement under these very particular circumstances is a health care decision.

In making this determination, we bear in mind well-settled principles. First of all, "[w]e interpret [the] power of attorney 'according to [its] plain terms' and 'us[e] the same rules of construction generally applicable to contracts and other written instruments.'" *Williams*, 685 S.W.3d at 724 (quoting *Tenn. Farmers Life Reassurance Co. v. Rose*, 239 S.W.3d 743, 749–50 (Tenn. 2007)). Generally, a power of attorney's language "determines the extent of the authority conveyed." *Id.* Likewise, "[a] cardinal rule of contractual interpretation is to ascertain and give effect to the intent of the parties." *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009) (citing *Allstate Ins. Co. v. Watson*, 195 S.W.3d 609, 611 (Tenn. 2006)). We look at the plain meaning of the contract's words to determine intent, and when "the contractual language is clear and unambiguous, the literal meaning controls . . ." *Id.*

Here, the language of both the POA and arbitration agreement is clear and unambiguous, and the parties' intent is clear from the face of the documents. Decedent excluded Ms. Buchanan from making health care decisions for Decedent, and the contract at issue states that its signing is a health care decision. Under these circumstances, we have

no choice but to conclude that although this case is similar to *Williams*, it differs in this material, dispositive way. While our Supreme Court squarely held in *Williams* that an arbitration agreement is a *legal decision* when it has no bearing on whether a resident may receive health care, that opinion does not contemplate the significant factual difference we now wrestle with. Defendants in this case opted to place language in their arbitration agreement expressly providing that assent to the contract is a health care decision. Nothing in *Williams* provides that nursing homes are not permitted to place such language in their contracts. Nor do we understand the *Williams* holding as displacing the way we interpret contracts, including arbitration agreements. *See Williams*, 685 S.W.3d at 723 ("Both the Federal Arbitration Act and corresponding Tennessee statutes make clear that 'agreements to arbitrate disputes should be treated in the same manner as other contracts.'" (quoting *Harvey ex rel. Gladden*, 532 S.W.3d at 266)). Here, there is nothing ambiguous about the language in either the POA or the arbitration agreement.

Consequently, we conclude that the POA did not provide Ms. Buchanan the authority to enter into the arbitration agreement with Defendants. The POA plainly excludes Ms. Buchanan from making health care decisions, which the arbitration agreement is per its clear, unambiguous language. As such, we reverse the trial court as to this issue.

II.     The Tennessee Health Care Decisions Act

Next, the trial court reasoned that even if Ms. Buchanan lacked authority to sign the arbitration agreement under the POA, she had apparent authority to do so as Decedent's surrogate pursuant to the Tennessee Health Care Decisions Act (the "Act"), found at Tennessee Code Annotated section 68-11-1801 *et seq*. "The [Act] outlines how a competent adult may execute a written 'advance directive' for health care that authorizes an 'agent' to make health care decisions should the adult lose the capacity to do so." *Welch v. Oaktree Health & Rehab. Ctr. LLC*, 674 S.W.3d 881, 891 (Tenn. 2023) (footnotes omitted) (citing Tenn. Code Ann. § 68-11-1803(b)). "The [Act] also created alternatives to written powers of attorney for health care, less formal methods for proxy decision-making." *Id.* One of these less formal methods for proxy decision-making is designating a health care surrogate pursuant to section 68-11-1806:

> (a) An adult or emancipated minor may designate any individual to act as surrogate by personally informing the supervising health care provider. The designation may be oral or written.
>
> (b) A surrogate may make a health care decision for a patient who is an adult or emancipated minor, if, and only if:
>
> (1) The patient has been determined by the designated physician to lack capacity; and

(2) No agent or guardian has been appointed or the agent or guardian is not reasonably available.

(c)(1) In the case of a patient who lacks capacity, has not appointed an agent, has not designated a surrogate, and does not have a guardian, or whose agent, surrogate, or guardian is not reasonably available, the patient's surrogate shall be identified by the supervising health care provider and documented in the current clinical record of the institution or institutions at which the patient is then receiving health care.

Tenn. Code Ann. § 68-11-1806(a)-(c).

While there is little case law construing section 68-11-1806, the case law that does exist suggests that the Act's requirements are strict. Indeed, a surrogate may be appointed "if, and only if," a designated physician determines the patient lacks capacity. *Id*; *see also Barbee v. Kindred Healthcare Operating, Inc.*, No. W2007-00517-COA-R3-CV, 2008 WL 4615858, at *11 (Tenn. Ct. App. Oct. 20, 2008) ("The Act states unequivocally that the 'determination that an individual lacks ... capacity ... must be made by the designated physician.'"). To that end, this Court has previously explained:

Thus, the Act provides a comprehensive, common sense method for making health care decisions for a patient who does not have an agent or guardian, but who cannot act on her own behalf. The apparatus set forth in the Act is practical and expeditious, eschewing judicial involvement, and can be accomplished in a matter of minutes in the healthcare facility that is to treat the patient. The statutory language is directive, mandating that both the determination of the patient's incapacity and the identification of the patient's surrogate be made by the patient's "designated physician," the physician with primary responsibility for the patient's care. **A surrogate may make health care decisions on the patient's behalf only if these requirements are met.**

*Barbee*, 2008 WL 4615858, at *11 (emphasis added). Thus, with respect to someone such as Decedent, who has not appointed a health care surrogate in accordance with section 68-11-1806(a), subsections (b) and (c) "require that certain conditions be met in order to authorize a surrogate to act on behalf of the patient." *McKey v. Nat'l Healthcare Corp.*, No. M2007-02341-COA-R3-CV, 2008 WL 3833714, at *3 (Tenn. Ct. App. Aug. 15, 2008).

Based on the foregoing, the trial court's finding that Ms. Buchanan was Decedent's health care surrogate under the Act is erroneous for various reasons. First and foremost, the facts of this case simply do not align with the statutory requirements listed above. Nothing in the record indicates that Decedent "designate[d] [Ms. Buchanan] to act as

surrogate by personally informing the supervising health care provider." *See* Tenn. Code Ann. § 68-11-1806(a). As we have already discussed at length, Decedent made Ms. Buchanan her attorney-in-fact but excluded Ms. Buchanan from making medical or health care decisions on Decedent's behalf. Nor does anything in the record suggest that these circumstances align with subsections (b) and (c). While it is undisputed that Decedent had significant health and cognitive issues upon admission to Grace Healthcare, there is nothing in the record from a designated physician[5] providing that Decedent lacked capacity for purposes of the Act. Insofar as "[a] surrogate may make health care decisions on the patient's behalf only if these requirements are met," *Barbee*, 2008 WL 4615858, at *11, we do not agree with the trial court that Ms. Buchanan had apparent authority to act as Decedent's health care surrogate under section 68-11-1806.

Moreover, no party presented this theory to the trial court. Rather, the trial court *sua sponte* determined that Ms. Buchanan was Decedent's health care surrogate as an alternative to Defendants' primary argument that the POA sufficiently provided Ms. Buchanan authority to sign the arbitration agreement. Ms. Buchanan, therefore, had no opportunity to respond to this theory in the lower court. *See State v. Bristol*, 654 S.W.3d 917, 924 (Tenn. 2022) ("Limiting review to the issues presented by the parties promotes fairness by ensuring that litigants have a meaningful opportunity to participate in the adjudicative process."). Further, Defendants concede that they never made this argument in the trial court, and they put forth no argument defending the trial court's ruling in their appellate brief. Nonetheless, "[t]he burden of proving that one had authority to make health care decisions for another under the [Act] lies with the party seeking to establish that authority." *Denton v. Allenbrooke Nursing & Rehab. Ctr., LLC*, 495 F. Supp. 3d 601, 610 (W.D. Tenn. 2020) (citing *Brown v. Quince Nursing & Rehab. Ctr., LLC*, No. 2:18-cv-2740, 2020 WL 4673471, at *4 (W.D. Tenn. Aug. 12, 2020); *Barbee*, 2008 WL 4615858, at *12).

Because Defendants do not argue that the Act applies here, their burden has not been met. And, in any event, the facts of this case do fit with the language of the statute relied on by the trial court, section 68-11-1806. Consequently, we also reverse the trial court as to this issue. Thus, Ms. Buchanan lacked authority to enter into the arbitration agreement, and it is not binding on the parties.

## CONCLUSION

The judgment of the Circuit Court for Williamson County is reversed, and this case is remanded for proceedings consistent with this opinion. Costs on appeal are assessed to

---

[5] The Act defines "designated physician" as "a physician designated by an individual or the individual's agent, guardian, or surrogate, to have primary responsibility for the individual's health care or, in the absence of a designation or if the designated physician is not reasonably available, a physician who undertakes such responsibility[.]" Tenn. Code Ann. § 68-11-1802(a)(4).

- 12 -

the appellees, Franklin Operating Group, LLC, d/b/a Grace Healthcare of Franklin; MFI Healthcare TN III LLC; MFI Healthcare GT, LLC; MFI Healthcare MD LLC; Anshel Niederman; and Abigail Dawn Gehrke, in her capacity as Grace Healthcare's administrator, for which execution may issue if necessary.

_____
KRISTI M. DAVIS, JUDGE